STATE of Wisconsin, Plaintiff-Respondent,

v.

David BARTON, Defendant-Appellant.†

Court of Appeals

*No. 2005AP905–CR. Submitted on briefs November 7, 2005.*
*—Decided December 28, 2005.*

2006 WI App 18

(Also reported in 709 N.W.2d 93.)

† Petition to review denied 2-27-06.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Len Kachinsky* of *Sisson and Kachinsky Law Offices*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. David Barton appeals a judgment of conviction and an order denying his postconviction motion. Barton contends a new trial should be

ordered in the interest of justice because the trial court erroneously admitted a State expert's opinion testimony. The testimony was based in part on scientific tests conducted by a colleague. Barton asserts admitting the expert's testimony violated his confrontation right. We disagree and affirm.

## BACKGROUND

¶ 2.   On October 26, 2000, firefighters were dispatched to a residential fire. Upon arrival, the firefighters found Barton, who was living at the house, outside with his mother. He claimed he had heard strange popping noises coming from some light fixtures. Barton had been remodeling the kitchen and stated he disabled the smoke alarms because dust, due to the remodeling, was causing false alarms.

¶ 3.   David Lyle, a laboratory analyst at the state crime lab, performed several chemical tests on samples of materials from the residence. The tests revealed ignitable liquid and gasoline-like substances on the samples. The test results were used to determine the fire was intentionally set. Barton was ultimately linked to the fire and charged with arson.

¶ 4.   At trial, Kenneth Olson, a technical unit leader at the crime lab, testified about the tests Lyle had performed. Lyle was unavailable to testify himself.[1] Olson had performed a peer review of Lyle's tests, and he presented his own conclusions regarding the tests to the jury. The lab reports themselves, which detailed the test results, were not offered into evidence.

---

[1] Barton objected to Olson's testimony, and a motion hearing was held. Lyle was retired and would not testify unless he was paid approximately $1,000. The court ruled Olson could testify.

¶ 5.    Barton was convicted. He filed a motion for postconviction relief arguing that the court erred by permitting Olson to testify about the tests performed by Lyle. The court denied the motion.

## STANDARD OF REVIEW

¶ 6.    WISCONSIN STAT. § 752.35 permits this court to provide relief in the interest of justice if we are convinced "that the real controversy has not been fully tried . . . ."[2] If a party demonstrates that the real controversy was not fully tried, we may exercise our power of discretionary reversal, even if we conclude that it is not probable that the result would be different at a new trial. *See id.*; *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). Our power of discretionary reversal should only be exercised in exceptional cases. *See Vollmer*, 156 Wis. 2d at 11.

¶ 7.    Determining whether a court's action violated a defendant's confrontation right is a question of constitutional fact. *State v. Smith*, 2002 WI App 118, ¶ 7, 254 Wis. 2d 654, 648 N.W.2d 15. This court has traditionally treated questions of constitutional fact as mixed questions of fact and law, and it has applied a two-step standard when reviewing lower court determinations of constitutional fact. *Id.*, ¶ 8. An appellate court reviewing issues of constitutional fact examines two determinations made by the circuit court but applies a different standard of review to each. *Id.*

¶ 8.    The circuit court first determines the evidentiary or historical facts relevant to the issue. *Id.* The circuit court then applies those facts to resolve the

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

constitutional questions. The standard of review by the appellate court of the trial court's findings of evidentiary or historical facts is that those findings will not be upset on appeal unless they are clearly erroneous. *Id.* This standard of review does not apply, however, to the trial court's determination of constitutional questions. Instead, the appellate court independently determines the questions of constitutional fact. *Id.*

### DISCUSSION

¶ 9.   Barton contends the circuit court erred by allowing Olson to testify because doing so violated his confrontation right.[3] Our supreme court directly addressed the issue Barton raises in this appeal in *State v. Williams*, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919. In *Williams*, police found Williams in possession of a substance that appeared to be cocaine. *Id.*, ¶ 3. As a result, the State charged Williams with cocaine possession. *Id.* At trial, the State introduced into evidence a state crime lab report that showed the substance in Williams's possession tested positive as cocaine base. *Id.*, ¶ 4. However, the State was unable to produce the analyst who performed the tests on the substance for testimony at trial. *Id.* Instead, the State presented the testimony of a crime lab unit leader who reviewed the analyst's results. *Id.* Based partly on the contents of the lab report, the unit leader testified in her opinion the substance in Williams's possession was cocaine base. *Id.*

¶ 10.   Williams argued his confrontation right was violated because he was unable to cross-examine the

---

[3] The Confrontation Clause states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. U.S. CONST. amend. VI.

analyst who performed the test, but the court disagreed. *Id.*, ¶ 5. Turning to cases from other jurisdictions, the court acknowledged that: "Various courts have concluded that under certain circumstances the right of confrontation may be satisfied by the admission of expert testimony based upon lab test results even where the actual tester is not also present to testify." *Id.*, ¶ 11. The court further stated, "The critical point . . . is the distinction between an expert who forms an opinion based in part on the work of others and an expert who merely summarizes the work of others." *Id.*, ¶ 19. In sum, the court articulated the following standard:

> Taken together, these cases teach that the presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders her own expert opinion is sufficient to protect a defendant's right to confrontation, despite the fact that the expert was not the person who performed the mechanics of the original tests.

*Id.*, ¶ 20.

¶ 11. Applying this standard, the court concluded that Williams's confrontation right was not violated by the unit leader's testimony. *Id.* The court observed that the unit leader had considerable training and experience, *id.*, ¶ 21, and she had been "closely connected to the tests and procedures involved in the case and supervised or reviewed the testing." *Id.*, ¶ 22. Further, the unit leader testified that, "based on this peer review, as well as her review of the relevant records, it was her opinion that the substance tested in this case contained cocaine base." *Id.*, ¶ 25. Therefore, the court stated, "although [the unit leader] based part of her opinion on facts and data gathered by someone else, she was not

211

merely a conduit for another expert's opinion." *Id.* Because the unit leader "was a highly qualified expert employed by the lab who was familiar with the particular lab procedures and performed the peer review in this particular case, then gave an independent expert opinion, her presence" satisfied Williams's confrontation right. *Id.*, ¶ 26.

¶ 12.  The supreme court also rejected Williams's contention that the unit leader's testimony was inadmissible as an expert opinion because the lab report on which it was partly based was inadmissible hearsay and the unit leader herself had not tested the substance. *Id.*, ¶ 27. The court held that an expert's opinion under Wis. Stat. § 907.03 may be based on inadmissible hearsay, *id.*, ¶ 28, noting that it is "rare indeed that an expert can give an opinion without relying to some extent upon information furnished by others." *Id.*, ¶ 29. Thus, the unit leader's expert opinion was admissible.

¶ 13.  Applying the standard articulated in *Williams*, Olson's testimony was properly admitted because he was a highly qualified expert presenting his independent opinion. Similar to the expert in *Williams*, Olson was the technical unit leader in the trace evidence unit in the crime lab. He had a bachelor of science degree in chemistry, and he had been employed at the crime lab for twenty-four years where he had obtained further training. In addition, he had been examining items for the presence of ignitable liquids for many years.

¶ 14.  Olson testified that Lyle tested three pieces of evidence for ignitable fluids. Olson presented to the jury the uniform procedures the crime lab employed to test for ignitable fluids; he further stated that, based on his review of the case file, Lyle had followed these procedures in his tests. Olson also testified that after

Lyle completed his tests, Olson conducted a peer review of Lyle's work. The prosecutor asked for Olson's opinion whether two of the pieces submitted to the crime lab contained ignitable liquids.

Q. Now based on your review of the entire file, all the data that you reviewed, all the computations, the entire file that was completed in this case, do you have an opinion to a reasonable degree of scientific certainty if there were any ignitable liquids on the two pieces of charred wood in this case?

A. Yes, I do.

Q. Okay. And what is that opinion?

A. It's my opinion that the two items that were submitted, item A and item B, had ignitable liquid residues consistent with a weathered gasoline sample.

Q. Now, again, I'm going to ask you is that your opinion again and not just – what you've just indicated on the record is that your professional opinion not just a summary of David Lyle but it's your professional opinion as an expert; is that correct?

A. That's correct.

¶ 15. Next, the prosecutor questioned Olson about an exhibit that Olson testified included "photo-copies of three chromatograms of unleaded gasoline in different stages of evaporation." Olson stated that he used those chromatograms to conclude that gasoline was present in the charred wood samples. Finally, Olson stated that another sample that had been submitted to the crime lab contained a "mid-range petroleum distil-late" similar to lighter fluid or mineral spirits.

213

¶ 16. Like the unit leader's testimony in *Williams*, Olson's testimony was properly admitted because he was a qualified unit leader presenting his individual, expert opinion. Olson not only examined the results of Lyle's tests, but he also performed a peer review of Lyle's tests. He formed his opinion based on his own expertise and his own analysis of the scientific testing. He then presented his conclusions to the jury, and he was available to Barton for cross-examination. Thus, Olson's testimony satisfied Barton's confrontation right and is admissible under the supreme court's decision in *Williams*.

¶ 17. Barton contends that *Crawford v. Washington*, 541 U.S. 36 (2004), overrules *Williams* "to the extent *Williams* is interpreted as permitting the State to rely upon inadmissible hearsay as the basis for Olson's testimony in this case." We disagree. Our analysis commences with a discussion of the history of the holding in *Crawford*.

¶ 18. Prior to *Crawford*, the Supreme Court set forth a two-prong test to determine whether admitting hearsay evidence violated a defendant's confrontation right in *Ohio v. Roberts*, 448 U.S. 56 (1980). First, the declarant must be unavailable to testify at trial. *Id.* at 65. Second, the hearsay statement must "bear[] adequate 'indicia of reliability.' " *Id.* at 66. Reliability exists when the testimony fell under a firmly rooted hearsay exception or when it possessed "particularized guarantees of trustworthiness" as determined by a court. *Id.* at 66.

¶ 19. *Crawford* discarded the reliability prong of *Roberts*, concluding that "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Crawford*, 541 U.S. at 61. With regard to testimonial evidence, instead of

reliability the Court instituted an inquiry into whether the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 68.

¶ 20.    The holding in *Crawford* does not undermine our supreme court's decision in *Williams. Williams* is clear: A defendant's confrontation right is satisfied if a qualified expert testifies as to his or her independent opinion, even if the opinion is based in part on the work of another. *Williams*, 253 Wis. 2d 99, ¶¶ 9, 11. We do not see, and Barton fails to explain, how *Crawford* prevents a qualified expert from testifying in place of an unavailable expert when the testifying expert presents his or her own opinion.

¶ 21.    Our conclusion is supported by courts in other jurisdictions. In *State v. Delaney*, 613 S.E.2d 699, 700 (N.C. Ct. App. 2005), an expert testified that substances found on a defendant's property were marijuana and opium. The expert's conclusions were based on analyses conducted by a chemist who did not testify. *Id.* The North Carolina Court of Appeals held that the expert's testimony was admissible noting that "it is well established that an expert may base an opinion on tests performed by others in the field and [the defendant] was given an opportunity to cross-examine [the expert] on the basis of his opinion, we conclude that there has been no violation of [the defendant's] right of confrontation under the rationale of *Crawford.*" *Id.* at 701.

¶ 22.    In a similar case, the California Court of Appeals stated:

> *Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on

215

which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion. *Crawford* itself states that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."

*People v. Thomas*, 30 Cal. Rptr. 3d 582, 587 (Cal. Ct. App. 2005) (quoting *Crawford*, 541 U.S. at 59, n.9).[4]

¶ 23.  Barton relies primarily upon *Smith v. State*, 898 So.2d 907 (Ala. Crim. App. 2004), for the proposition that *Crawford* overrules *Williams*, but we remain unconvinced. In *Smith*, the Court of Criminal Appeals of Alabama held that the trial court harmlessly erred by admitting an autopsy report and the testimony of two experts who testified about the autopsy but did not perform it. *Id.* However, the *Smith* court did not provide any noteworthy confrontation right analysis for the admission of the experts' testimony. We do not find *Smith* compelling enough to hold that *Williams* has been overruled by *Crawford*.

*By the Court.*—Judgment and order affirmed.

[4] Both the North Carolina and California courts held that the underlying reports were admissible because they were not admitted for the truth of the matter asserted but as the basis of the expert's testimony. *See State v. Delaney*, 613 S.E.2d 699, 700–01 (N.C. Ct. App. 2005); *People v. Thomas*, 30 Cal. Rptr.3d 582, 587 (Cal. Ct. App. 2005). Our supreme court in *Williams* held that the report upon which the expert based his opinion was inadmissible hearsay. *See State v. Williams*, 2002 WI 58, ¶¶ 34–49, 253 Wis. 2d 99, 644 N.W.2d 919. Here, the State never admitted the report into evidence, so there is no issue.