STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard Lavon DEADWILLER, Defendant-Appellant.†

Court of Appeals

*Nos. 2010AP2363–CR, 2010AP2364–CR.*
*Submitted on briefs June 19, 2012.—Decided July 10, 2012.*

2012 WI App 89

(Also reported in 820 N.W.2d 149.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark S. Rosen* of *Rosen and Holzman*, Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Richard Deadwiller appeals the judgments entered on jury verdicts convicting him of two counts of second-degree sexual assault with the use of force. *See* Wis. Stat. § 940.225(2)(a). He contends that the trial court violated his right to confrontation

by allowing a technician from the Wisconsin State Crime Laboratory to rely on a scientific report that profiled the DNA left on the victims by their attacker. We held this appeal pending the United States Supreme Court decision in *Williams v. Illinois*, 567 U.S.___, 2012 WL 2202981 (June 18, 2012), which, although argued December 6, 2011, was released on June 18, 2012. As we see below, *Williams* determined that reports like the one in this case are not "testimonial" and, therefore, may be relied on by a testifying expert without violating a defendant's right to confrontation even though the person who prepared the report does not testify. Accordingly, we affirm.

## I.

¶ 2. The State charged Deadwiller with forcibly sexually assaulting Kristina S. and Chantee O. Twenty-three-year-old Kristina S. testified at trial that Deadwiller "raped" her. Thirty-seven-year-old Chantee O. also testified that Deadwiller "raped" her. Both Kristina S. and Chantee O. went to Mount Sinai hospital after the assault. A sexual-assault nurse examiner at Mount Sinai testified that she took vaginal and cervical specimens from both Kristina S. and Chantee O. She also told the jury that she packaged the specimens and secured them in a special storage area at the hospital. Milwaukee police officers testified that they took the materials to their department, and that the specimens were later transferred to the State Crime Laboratory.

¶ 3. Ronald G. Witucki, a State Crime Laboratory technician, testified that the Crime Laboratory sent the specimens collected from Kristina S. and Chantee O. to Orchid Cellmark, a Texas laboratory that examines some DNA material for the State Crime Laboratory. He told the jury that Orchid Cellmark sent him DNA-

profile reports for the semen specimens. He explained that Orchid Cellmark was a well-qualified laboratory accredited by the same group that accredits the State Crime Laboratory, the American Society of Crime Laboratory Directors Laboratory Accreditation Board.

¶ 4. Witucki testified that when he received the reports from Orchid Cellmark, he assured himself that Orchid Cellmark followed standard DNA-analysis protocols: "What we're looking for is we're checking to see that they followed their procedures, that their quality control measures were followed, they got acceptable results on their control values." Witucki then personally determined that the DNA profiles showed semen, and compared them to profiles stored in a DNA data bank to see if they matched someone whose DNA profile was there.

¶ 5. The Orchid Cellmark profiles of the semen DNA taken from Kristina S. and Chantee O. both matched Deadwiller's DNA profile in the data bank. Witucki described the matches, however, as "investigative information" only that prompts the State Crime Laboratory to "ask for a new fresh DNA sample be submitted from the individual we've identified as matching to those evidentiary profiles." *See State v. Ward*, 2011 WI App 151, ¶ 5, 337 Wis. 2d 655, 661, 807 N.W.2d 23, 27 (describing the two-step process). Witucki told the jury that he got samples of Deadwiller's DNA and compared Deadwiller's DNA to the semen DNA taken from the victims. He told the jury that in his opinion Deadwiller was the source of the DNA taken from both Kristina S. and Chantee O.

¶ 6. Deadwiller testified at the trial, and told the jury that he had consensual sex with Kristina S. and Chantee O., and did not dispute that the semen was his. He argues on appeal that he may not have testified if the

trial court had not permitted the State Crime Laboratory technician to rely on the Orchid Cellmark analyses. As we have seen, he claims that reliance of the Orchid Cellmark reports violated his constitutional right to confrontation.

## II.

■■

¶ 7.   The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to *be confronted with the witnesses against him;* to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

(Emphasis added.)[1] The confrontation right applies to statements that are "testimonial." *Davis v. Washington,* 547 U.S. 813, 821 (2006); *Crawford v. Washington,* 541

---

[1] Article I, § 7 of the Wisconsin Constitution is similar:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; *to meet the witnesses face to face;* to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

(Emphasis added.) Deadwiller does not argue on this appeal that the trial court violated his confrontation right under the Wisconsin Constitution. Accordingly, we do not discuss it. *See*

707

U.S. 36, 68–69 (2004) ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."). Deadwiller contends that the Orchid Cellmark report of the DNA material taken from Kristina S. and Chantee O. was "testimonial" and, accordingly, the trial court should not have permitted the State Crime Laboratory technician to rely on it in opining that Deadwiller was the source of the DNA taken from Kristina S. and Chantee O. Our analysis of this constitutional legal issue is *de novo. See State v. Manuel,* 2005 WI 75, ¶ 25, 281 Wis. 2d 554, 569, 697 N.W.2d 811, 818. Our decision is controlled by *Williams v. Illinois.*

¶ 8.    The defendant in *Williams* was convicted in a bench trial of rape. *Williams,* 567 U.S. at ___, 2012 WL 2202981, at *5. There, as here, the State relied on the testimony of its DNA expert to connect the DNA recovered from the victim with the DNA from the defendant. *Ibid.* The rapists's DNA recovered from the victim was profiled by an "outside laboratory," and no one from that laboratory testified. *Ibid.* The defendant contended that the expert's reliance on the outside laboratory's report violated his right to confrontation. *Ibid. Williams* disagreed, although no one thread of analysis commanded a majority.

¶ 9.    Justice Samuel A. Alito wrote the lead opinion, in which three of his colleagues joined. *Id.*, 567 U.S. at ___, 2012 WL 2202981, at *4.[2] They determined that

*Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (issues not briefed are forfeited).

[2] Although Justice Stephen G. Breyer wrote a concurring opinion, he joined Justice Alito's opinion "in full." *Williams v. Illinois,* 567 U.S.___, ___, 2012 WL 2202981, at *30 (June 18, 2012).

Williams's conviction should be affirmed on two independent grounds. First, that the outside laboratory's report was not received for its truth. *Id.*, 567 U.S. at ___, 2012 WL 2202981, at *6. Justice Alito explained:

> When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.

*Ibid.*

Second, that the outside laboratory's report was not "testimonial":

> [The outside laboratory's] report is very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach. The report was produced before any suspect was identified. The report was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose. And the profile that [the outside laboratory] provided was not inherently inculpatory. On the contrary, a DNA profile is evidence that tends to exculpate all but one of the more than 7 billion people in the world today.

*Ibid.*

¶ 10. Justice Clarence Thomas concurred in *Williams*'s judgment (and, indeed, provided the necessary fifth vote to affirm Williams's conviction), but disagreed with the lead opinion's conclusion that the outside laboratory's report was not received for its truth. *Id.*, 567 U.S. at ___, 2012 WL 2202981, at *31–*34

("[T]here was no plausible reason for the introduction of [the outside laboratory's report]'s statements other than to establish their truth."). Justice Thomas concluded, however, that the outside laboratory's report was not "testimonial" because, analyzing the confrontation clause in the light of its history and the evils it was designed to address, it did not "bear[] 'indicia of solemnity.' " *Id.*, 567 U.S. at ___, 2012 WL 2202981, at \*34 (quoted source omitted). He explained: "I have concluded that the Confrontation Clause reaches " 'formalized testimonial materials,' "such as depositions, affidavits, and prior testimony, or statements resulting from " 'formalized dialogue,' " such as custodial interrogation[,]" as well as " 'the use of technically informal statements when used to evade the formalized process.' " *Id.*, 567 U.S. at ___, 2012 WL 2202981, at \*34 & \*34 n.5 (quoted sources omitted). In his view, the outside laboratory's report was not "testimonial" under this understanding of the right to confrontation. Id., 567 U.S. at ___, 2012 WL 2202981, at \*34 ("Applying these principles, I conclude that [the outside laboratory]'s report is not a statement by a 'witnes[s]' within the meaning of the Confrontation Clause.") (second set of brackets by Justice Thomas).

¶ 11.   Justice Elena Kagan dissented on behalf of three of her colleagues. *Id.*, 567 U.S. at ___, 2012 WL 2202981, at \*38. They agreed with Justice Thomas that the outside laboratory's report was used at the trial for its truth, but disagreed with the five justices concurring in *Williams*'s judgment that this did not violate the defendant's right to confrontation. Thus, Justice Kagan pointed out that the Illinois DNA technician "informed the trier of fact that the testing of [the victim]'s vaginal swabs had produced a male DNA profile implicating Williams," and that this thus "went to its truth." *Id.*, 567

U.S. at ___, 2012 WL 2202981, at *43, *44. She opined that this violated the defendant's right of confrontation because the defendant could not test by cross-examination the verity of the outside laboratory's conclusions. *Id.*, 567 U.S. at ___, 2012 WL 2202981, at *43–46.

¶ 12. We need not parse in any great detail the philosophical underpinnings of the various opinions in *Williams* because although they disagreed as to their rationale, five justices agreed at the core that the outside laboratory's report was not testimonial. This conclusion governs this case, and we do not have to delve beyond this core to analyze whether, as Justice Alito's lead opinion concludes in part, that the outside laboratory's report was not relied on for its truth (with which five justices disagreed), or whether, as Justice Alito seems to indicate, the analysis might have been more far-ranging if Williams's trial had been to a jury rather than to a judge, although he also notes that he does "not suggest that the Confrontation Clause applies differently depending on the identity of the factfinder. Instead, our point is that the identity of the factfinder makes a big difference in evaluating the likelihood that the factfinder mistakenly based its decision on inadmissible evidence." *Id.*, 567 U.S. at ___, 2012 WL 2202981, at *14 & *14 n.4 (internal reference to Dissent omitted). This discourse on possible foundational gradations does not apply here because, as we have seen, the State laid more than a sufficient foundation for the jury to conclude that the semen recovered from Kristina S. and Chantee O. was sent to Orchid Cellmark, and that Orchid Cellmark's profiles were consistent with approved DNA-analysis standards.

711

¶ 13. Under Wis. Stat. Rule 909.01, a proponent of evidence establishes its authentication if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Stated another way, all that need be shown is that it is "improbable that the original item has been exchanged, contaminated or tampered with." *B.A.C. v. T.L.G.*, 135 Wis. 2d 280, 290, 400 N.W.2d 48, 53 (Ct. App. 1986) (chain of custody is one form of authentication). Further, unlike the situation to which Justices Alito and Kagan referred to in *Williams*, the jury here did not have to rely on Witucki's testimony for it to conclude beyond a reasonable doubt that the semen samples sent to Orchid Cellmark were those recovered from Kristina S. and Chantee O. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 507–508, 451 N.W.2d 752, 755, 758 (1990) (Proof of a crime's elements may be made by circumstantial evidence that logically flows from the direct evidence.). Additionally, Witucki testified that he personally reviewed and approved what Orchid Cellmark had done. This is thus akin to the situation in *State v. Barton*, 2006 WI App 18, 289 Wis. 2d 206, 709 N.W.2d 93 (Ct. App. 2005), a post-*Crawford* decision, where we held that the defendant's confrontation right was not violated by a testifying expert's reliance on a report prepared by an analyst who did not testify because the testifying expert "performed a peer review" of the non-testifying analyst's tests, and "formed his opinion based on his own expertise and his own analysis of the scientific testing." *Barton*, 2006 WI App 18, ¶ 16, 289 Wis. 2d at 214, 709 N.W.2d at 97.

¶ 14. We are bound in this case by the *judgment* in *Williams*, and the narrowest holding agreed-to by a

712

majority (albeit with different rationales) is that the Illinois DNA technician's reliance on the outside laboratory's report did not violate Williams's right to confrontation because the report was not "testimonial" and therefore did not implicate the Confrontation Clause. *See Marks v. United States,* 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' ") (quoted source omitted, ellipses by *Marks*). Under the facts here, the Orchid Cellmark report was not "testimonial." We affirm.

*By the Court.*—Judgments affirmed.