SHIRLEY S. ABRAHAMSON, C.J.
¶ 47. (concurring) ,[1] This writing is really a lament. A lament that the majority opinion reaches a result without a rationale. Because the majority opinion offers no rationale for the result, the majority opinion does not help answer the recurring significant central constitutional/evidentiary question presented, namely, "How does the Confrontation Clause apply to the panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians?"[2] This central question is ubiquitous in trial courts every day.
¶ 48. The majority opinion reaches its result based on the result reached by the United States Supreme Court in Williams v. Illinois, 132 S. Ct. 2221 (2012). Williams was a plurality decision. As a result of issuing a plurality decision, the United States Supreme Court has not synthesized its case law interpreting Crawford v. Washington, 541 U.S. 36 (2004), to adequately delineate the intersection of the Confrontation Clause and the rules of evidence and the application of the Confrontation Clause to the use of crime laboratory reports at trial. The instant case presents this court an opportunity to do *172 so. Yet the majority opinion sidesteps this opportunity and in doing so, fails to advance the law in this important area.
¶ 49. I write for two reasons.
¶ 50. First, I conclude that this court is not obligated to follow the United States Supreme Court's decision in Williams v. Illinois in reaching its result. The decision is not binding upon this court because there is no single or narrowest rationale upon which the majority of the United States Supreme Court relied in reaching its conclusion.
¶ 51. Second, in relying on Williams to dictate the result in the present case, the majority opinion misses an opportunity to examine more fully the important question raised regarding the intersection of the Confrontation Clause and the rules of evidence and the application of the Confrontation Clause to the numerous types of crime laboratory reports and the witnesses testifying about them.
I
¶ 52. The first issue is what role Williams should play in our court's decision in the present case. Williams was a plurality decision. It is not the first plurality decision of the United States Supreme Court (or this court), and it will not be the last.
¶ 53. Rules have been developed instructing federal and state courts how to interpret and apply plurality decisions.
¶ 54. The United States Supreme Court declared in Marks v. United States, 430 U.S. 188, 193 (1977), that when it issues a plurality decision, with no five Justices agreeing on a rationale, courts should regard the opinion of the Justice concurring on the narrowest possible grounds as the Court's ultimate holding.
*173 ¶ 55. This court has followed Marks in applying plurality opinions of the United States Supreme Court and in applying plurality decisions of this court. See, e.g., Vincent v. Voight, 2000 WI 93, ¶ 46, n.18, 236 Wis. 2d 588, 614 N.W.2d 388; Lounge Mgmt., Ltd. v. Town of Trenton, 219 Wis. 2d 13, 21-22, 580 N.W.2d 156 (1998); Tomczak v. Bailey, 218 Wis. 2d 245, 284, 578 N.W.2d 166 (1998) (Crooks, J. concurring) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, & Stevens, JJ.)).
¶ 56. The Marks narrowest grounds rule has been interpreted as applying only when "one opinion can be meaningfully regarded as 'narrower' than another— only when one opinion is a logical subset of other, broader opinions" and can "represent a common denominator of the Court's reasoning. . . ." King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc)). Therefore, "in cases where approaches differ, no particular standard is binding on an inferior court because none has received the support of a majority of the Supreme Court." Ankar Energy Corp. v. Consolidation Coal Co., 177 F.3d 161, 170 (3d Cir. 1999). "When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court." United States v. Alcan Aluminum Corp., 315 F.3d 179, 189 (2d Cir. 2003).
¶ 57. No narrowest opinion exists in Williams. No one opinion is a logical subset of another broader opinion.[3]
*174 ¶ 58. Five Justices of the United States Supreme Court concluded in Williams that a DNA report similar to the one introduced in the present case did not violate the Confrontation Clause. They could not agree on the reason. Four of these Justices concluded that the admission of a Cellmark report did not violate the Confrontation Clause because the report was not used to prove the truth of the matter asserted and its primary purpose was not to accuse a targeted individual of a crime. Williams, 132 S. Ct. at 2243. One Justice agreeing with the disposition of the case concluded that the report was non-testimonial because it "lacked the requisite 'formality and solemnity' to be considered 'testimonial' . .. ." Williams, 132 S. Ct. at 2255 (Thomas, J., concurring).[4]
¶ 59. Four Justices dissented, concluding that the admission of a Cellmark report was a Confrontation Clause violation. Williams, 132 S. Ct. at 2265 (Kagan, J., dissenting).
¶ 60. I do not view the Williams decision as binding on this court. There is no "narrowest" rationale upon which to rely. The plurality opinion and Justice Thomas's concurrence employ differing approaches to reach the same conclusion that no Confrontation Clause violation occurred, but no opinion is a "logical subset" of another.
¶ 61. As Justice Kagan noted in her dissent, "[I]n all except [the plurality's] disposition, [Justice Alito's] opinion is a dissent: Five Justices specifically reject every aspect of its reasoning and every aspect of its *175 explication." Williams, 132 S. Ct. at 2265 (Kagan, J., dissenting). Therefore, although the inclusion of Justice Thomas's concurrence means five Justices reached the same result, the reasoning of the concurrence cannot be considered the narrowest grounds or the "logical subset" of the plurality opinion.
¶ 62. The majority opinion follows the result in Williams because the defendant in Williams and the defendant in the present case are in "substantially identical positions." Thus, the majority opinion asserts that five Justices of the United States Supreme Court would most likely reach the same conclusion as they reached in Williams if presented with the instant case. Majority op., ¶¶ 31-34.[5]
¶ 63. Without explaining why it is deviating from our precedent that relies on the Marks plurality opinion rule, the majority opinion adopts a different way of approaching a plurality decision of the United States Supreme Court. The majority opinion's new approach to a plurality decision is to ask (and answer) how five members of the United States Supreme Court would dispose of the present case. In other words, the majority opinion asks (and answers) the following question: What result would the four-member plurality in Williams plus Justice Thomas reach in the present case?
¶ 64. I ask, what is the effect of the majority opinion's new approach on our prior cases adopting the Marks rule? Does the majority opinion's "follow the *176 result" rule replace the "follow the narrowest rationale" rule from Marks? Is it an interpretation of or an alternative to the Marks rule? Does the majority opinion's "follow the result" rule require that the facts of each new case be on all fours with the decision of the United States Supreme Court? Does the majority opinion's "follow the result" rule require this court to follow a certain rationale that led to that result, even though no rationale has received the support of a majority of the United States Supreme Court? Does the majority opinion's "follow the result" rule require that all of the United States Supreme Court Justices who agreed on the result still be on the Court when a new state case is presented?
¶ 65. Because there is no single or narrowest rationale upon which the majority in the United States Supreme Court relied on reaching its conclusion in Williams, I conclude that there is no standard in Williams for this court to follow.
II
¶ 66. I turn now to my second point. In relying on Williams to dictate the result in the present case, the court misses an opportunity to examine the question raised regarding the intersection of the Confrontation Clause and the rules of evidence and the application of the Confrontation Clause to a wide array of crime laboratory reports and the witnesses who testify about them.
¶ 67. It may be fairly easy to speculate what result the Williams Court would reach in the present case when Williams was so recently decided and is so similar to the facts of the present case. It will not be as easy in other cases in the near and distant future that present different fact situations.
*177 ¶ 68. By adopting the result of Williams without fully setting forth a rationale, a standard, that Wisconsin courts should follow in future cases, the court has failed to strive to unbundle Confrontation Clause doctrine.
¶ 69. I agree with Justice Breyer, who lamented at length in Williams about the gravity of the issues left unresolved by the Williams decision. Justice Breyer would have preferred that the Court take a fresh look at the intersection of the Confrontation Clause and the rules of evidence and synthesize Crawford, Melendez-Diaz,[6] and Bullcoming[7] with the issues presented in Williams.[8] This synthesis is essential because the Justices of the United States Supreme Court have expressed widely divergent views in these cases.
¶ 70. One commentary concluded that the Williams plurality opinion deferred to the Illinois rules of evidence, thus "intermingl[ing] the Confrontation Clause with state rules of evidence,.. . precisely the evil that Crawford helped to remedy ... [and] amounting to an unacknowledged departure from Crawford itself." The Supreme Court, 2011 Term — Leading Cases, 126 Harv. L. Rev. 176, 273 (2012). This law review piece opines on Williams as follows: "The Court could have avoided such a confusing outcome, if only a single additional Justice had either joined the Justices in the plurality to write a majority opinion overruling Melendez-Diaz and Bullcoming or joined the dissent and thereby strengthened and clarified the requirements of Melendez-Diaz and Bullcoming." The Supreme Court, 2011 Term — Leading Cases, 126 Harv. L. Rev. 176, 276 (2012).
*178 ¶ 71. Justice Breyer also raised important practical questions. Who may the prosecution call to testify and how many people who were involved in the laboratory should have to testify to satisfy the Confrontation Clause?[9] Justice Breyer noted that the Williams plurality decision, like decisions before it, has failed to produce a clear, generally applicable practical answer to the Confrontation Clause issue with respect to routine crime laboratory results:
Once one abandons the traditional [Federal] rule [of Evidence 703], there would seem often to be no logical stopping place between requiring the prosecution to call as a witness one of the laboratory experts who worked on the matter and requiring the prosecution to call all of the laboratory experts who did so. Experts — especially laboratory experts — regularly rely on the technical statements and results of other experts to form their own opinions. The reality of the matter is that the introduction of a laboratory report involves layer upon layer of technical statements (express or implied) made by one expert and relied upon by another.[10]
¶ 72. Although Justice Breyer concurred to criticize the plurality for failing to produce a clear, generally applicable rule, Justice Kagan dissented to fault the plurality for tarnishing what she viewed as the clear rule that the Court had recently espoused. Before Williams, two landmark Court decisions within the last three years in Melendez-Diaz and Bullcoming demanded that "a prosecutor wishing to admit the results of forensic testing had to produce the technician responsible for the analysis."[11] "But that clear rule is clear no longer," *179 lamented Justice Kagan.[12] In failing to follow these recent decisions, the Court has "left significant confusion in [its] wake."[13]
¶ 73. Commentators have levied criticism at all four of the Williams opinions:
The lack of either a majority opinion or a clear holding, in addition to the internal flaws of the various opinions, deeply muddles Confrontation Clause doctrine, leaving the clause's application to forensic evidence in question.[14]
¶ 74. This court should, I think, take Justice Breyer's advice and examine the issues presented and decide the present case on the basis of constitutional precedent of the United States Supreme Court and this court, learning to the extent possible from the diversity of opinions in these cases. Although the United States Supreme Court has failed to provide clear, consistent answers on the interplay of the Confrontation Clause and evidentiary rules when laboratory reports and statements are introduced or relied upon, this court should attempt to craft a constitutional standard and fashion an approach that is theoretically and practically sound.
¶ 75. Our re-examination of the applicable state and federal precedent would be fruitful to guide circuit courts, prosecutors, defense counsel, and expert witnesses in the conduct of trials in which an array of laboratory reports and statements are introduced or relied upon.[15] Unless we do so, courts and litigants will *180 have little or no guidance on how to proceed when the next cases are presented in the circuit courts with different sets of circumstances and different kinds of crime laboratory reports and witnesses at issue.
¶ 76. Justice Breyer began this examination in his Williams concurrence when he acknowledged that courts and treatise writers have recognized the problem and have suggested at least six different solutions.[16] All of the approaches assume some kind of Crawford boundary — some kind of limitation upon the scope of Crawford — delineating who may be permitted to testify and upon what evidence they may rely.[17] This standard would respect defendants' constitutional rights to confront the witnesses who collect, process, and analyze the evidence presented at trial while not requiring every person who has ever touched the evidence to testify in court.
*181 ¶ 77. Not only must this court harmonize Williams with Crawford, Melendez-Diaz, and Bullcoming, but it must also harmonize Wisconsin court decisions such as State v. Williams[18] and State v. Barton.[19] The majority opinion, relying more on the result of Williams than the rationale of the Crawford line of cases, leaves this major task undone.
¶ 78. For the reasons set forth, I write separately.
¶ 79. I am authorized to state that Justice ANN WALSH BRADLEY joins Part I of this opinion.

 Williams v. Illinois, 132 S. Ct. 2221, 2244 (Breyer, J., concurring).

 For a recent law review commentary on the Marks rule, see W Jesse Weins, Note, A Problematic Plurality Precedent: Why the Supreme Court Should Leave Marks Over Van Orden v. Perry, 85 Neb. L. Rev. 830 (2007).

 Justice Thomas's concurrence in Williams explicitly rejects the plurality's "flawed analysis" and asserts that "there was no plausible reason for the introduction of Cellmark's statements other than to establish their truth." Williams, 132 S. Ct. at 2255-56 (Thomas, J., concurring).

 The facts of the present case and Williams are somewhat different. The question is whether the differences matter. Here a jury, rather than a judge, determined the defendant's guilt. Justice Alito's plurality opinion hinted that a change in the fact-finder might be an issue. Williams, 132 S. Ct. at 2236; majority op., ¶ 34 n.11.

 Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).

 Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011).

 Williams, 132 S. Ct. at 2248 (Breyer, J., concurring).

 Id. at 2246-47 (Breyer, J., concurring).

 Id. at 2246 (Breyer, J., concurring).

 Id. at 2277 (Kagan, J., dissenting).

 Id. (Kagan, J., dissenting).

 Id. (Kagan, J., dissenting).

 The Supreme Court, 2011 Term — Leading Cases, 126 Harv. L. Rev. 176, 267 (2012).

 For examples of courts taking this approach of reexamining the case law to address Confrontation Clause chal *180 lenges, see United States v. James, 712 F.3d 79 (2d Cir. 2013); People v. Pealer, 985 N.E.2d 903 (N.Y. 2013).

 Williams, 132 S. Ct. at 2247-48 (Breyer, J., concurring).

 Id. at 2248 (Breyer, J., concurring).
As a basis for discussion, Justice Breyer's concurrence provides the following alternative solution to help satisfy the Confrontation Clause:
[S]hould the defendant provide good reason to doubt the laboratory's competence or the validity of its accreditation, then the alternative safeguard of reliability would no longer exist and the Constitution would entitle [the] defendant to Confrontation Clause protection.
Williams, 132 S. Ct. at 2252 (Breyer, J., concurring).
For commentary on Williams, see, e.g., Michael A. Sabino & Anthony Michael Sahino, Confronting the "Crucible of Cross-Examination": Reconciling the Supreme Court's Recent Edicts on the Sixth Amendment's Confrontation Clause, 65 Baylor L. Rev. 255 (2013).

 State v. Williams, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919.

 State v. Barton, 2006 WI App 18, 289 Wis. 2d 206, 709 N.W.2d 93.