STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. GRIEP, Defendant-Appellant.†

Court of Appeals

*No. 2009AP3073–CR. Submitted on briefs December 19, 2013.
—Decided February 19, 2014.*

2014 WI App 25

(Also reported in 845 N.W.2d 24.)

† Petition for Review granted August 5, 2014.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Michael R. Griep*, pro se, and supplemental brief of *Peter S. Moreno* and *Tricia J. Bushnell* of the *Frank J. Remington Center*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Adam J. Levin*, assistant district attorney, and *Christian A. Gossett*, district attorney, Oshkosh, and supplemental brief of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1 BROWN, C.J.   This operating a motor vehicle while intoxicated case raises a recurring and unsettled question of law:   under *Crawford v. Washington*, 541 U.S. 36 (2004), may the State submit evidence of a driver's blood alcohol level at trial when the analyst who did the actual testing is unavailable to testify? Given how frequently the issue arises in our state courts, the muddled state of the relevant law, and the arguable conflict between binding state court opinions and subsequent United States Supreme Court opinions, we certified the issue to our state supreme court. *State v. Griep*, No. 2009AP3073–CR (WI App May 15, 2013). Our supreme court having refused the certification, we follow our state law precedent, *State v. Barton*, 2006 WI App 18, 289 Wis. 2d 206, 709 N.W.2d 93, which holds that such surrogate expert testimony is admissible.

¶ 2.   Even so deciding, we acknowledge that Michael Griep makes a good argument when he asserts that the surrogate expert testimony in this case was a subterfuge for admitting an unavailable expert's report in violation of *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705 (2011), and *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012). *See United States v. Turner*, 709 F.3d 1187, 1191–94 (7th Cir. 2013) (holding any error was harmless, but stating that a surrogate expert's testimony concerning analysis of a test for

cocaine base "put [the actual analyst's] out-of-court statements before the jury" and "allowed [the surrogate] to vouch for the reliability of [the actual analyst's] work," depriving the defendant of the opportunity to ask questions about the actual handling and analysis of the substances in question), *petition for cert. filed,* 80 U.S.L.W. 3082 (U.S. July 29, 2013) (No. 13–127).

¶ 3.   But while the Seventh Circuit has reasoned in Griep's favor, except for the harmless error analysis, the federal circuits are split on this issue.[1] Moreover, our supreme court has recently cited and discussed *Barton* favorably, albeit in a completely different fact situation, *see State v. Deadwiller,* 2013 WI 75, ¶¶ 37–40, 350 Wis. 2d 138, 834 N.W.2d 362, leading us to the conclusion that the court considered *Barton* to be good law, at least applied to that case. In short, the law is not clear, so we must adhere to our binding state court precedents. *See State v. Jennings,* 2002 WI 44, ¶ 43, 252 Wis. 2d 228, 647 N.W.2d 142.

*Facts and Proceedings Leading to Griep's Conviction*

¶ 4.   In August 2007, a police officer who stopped Griep for speeding smelled alcohol on Griep's breath and asked how much he had been drinking. Griep readily admitted to some drinking, and after performing poorly on field sobriety tests, he admitted having consumed three or four beers. A preliminary breath test showed intoxication, and Griep was arrested for drunk driving. He was then taken to a local hospital for blood testing. The arresting officer watched a phlebotomist

---

[1] *Compare, e.g., United States v. Turner,* 709 F.3d 1187 (7th Cir. 2013), *petition for cert. filed,* 80 U.S.L.W. 3082 (U.S. July 29, 2013) (No. 13–127), *with United States v. James,* 712 F.3d 79 (2d Cir. 2013), *petition for cert. filed,* 82 U.S.L.W. 3368 (U.S. Nov. 22, 2013) (No. 13–632).

draw the blood and seal the vials; the officer then packed the vials and related paperwork together to be sent to Madison for lab testing.

¶ 5. At Griep's trial, the arresting officer and the phlebotomist testified and were subject to cross-examination concerning the collection of Griep's blood. The analyst who tested the blood itself and produced a report concluding Griep's blood sample had a blood alcohol level of .152, was unavailable to testify at the trial.

¶ 6. In the analyst's place the court heard testimony from her supervisor, Patrick Harding, about the lab's analysis of Griep's blood sample from the night of his arrest. Over Griep's objection, Harding testified that "all indications are that the procedures were followed, the instrument was operating properly," and that in his "independent opinion," based upon the data set forth in the documentation of the testing, "the alcohol concentration of Mr. Griep's sample was 0.152 grams of ethanol per 100 milliliters of blood." On cross-examination, Harding admitted that he could not testify as to any personal observations of the sample at the time of the actual testing, such as how much blood was in the test tube when it arrived at the state lab, whether there was anything unusual about it, or whether the vacuum in the tube had been preserved. He also admitted that a "nefarious" analyst could "possibly escape . . . detection" despite the lab procedures, and that "in order to have a reliable test result, it is important [to] have a competent and honest analyst." On redirect Harding pointed out that every analyst's work was "peer reviewed" for "every single sample" and "is also signed off by a supervisor or another person."

¶ 7. Griep objected to portions of Harding's testimony, arguing that an expert who did not conduct the

analysis "is not allowed to vouch for the competency and honesty of another witness."

> Harding, when he is testifying to a specific analysis he doesn't remember, is vouching for his own competence and honesty. He is allowed to do that. He is not allowed to vouch for the competency and honesty of another witness . . . because it denies Mr. Griep his right to confront the actual witness.

¶ 8. The State responded that "an expert [testifying in reliance upon] dat[a] produced by another person does not violate the confrontation clause," citing *Barton*, 289 Wis. 2d 206, ¶ 20, ("[a] defendant's confrontation right is satisfied if a qualified expert testifies as to his or her independent opinion, even if the opinion is based in part on the work of another"). The State also disputed Griep's interpretation of the recent Supreme Court decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which held that admitting forensic analysis of a substance alleged to be cocaine via affidavit violated the Confrontation Clause. The State argued that *Melendez-Diaz* merely disapproved of a "statutory gimme for certified lab results," and did nothing to undermine the rule from *Barton*. The circuit court's conclusion was no doubt based on the fact that, in *Melendez-Diaz*, only the report itself was admitted into evidence. Not only did the analyst fail to testify, no surrogate testified either. *See Melendez-Diaz*, 557 U.S. at 308–09.

¶ 9. The circuit court agreed with the State that the holding in *State v. Williams*, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919,[2] which underlies *Barton*,

---

[2] Two of the important precedents in this case—one a United States Supreme Court decision from 2012, the other a Wisconsin Supreme Court decision from 2002—happen to share

289 Wis. 2d 206, ¶ 20, was still good law. An expert "cannot act as a mere conduit" for another's opinion, but "can [rely] on things that normally they would use to reach or render an opinion," such as a report of another expert's testing. Griep appealed.

*Legal Developments While Griep's Appeal Was Pending*

¶ 10.   After we first took Griep's appeal under submission, we learned that the United States Supreme Court had recently accepted the petition for certiorari in an extraordinarily similar case, *State v. Bullcoming*, 226 P.3d 1 (N.M. 2010). *Bullcoming* concerned an OWI prosecution and presented the issue of "[w]hether the Confrontation Clause permits the prosecution to introduce testimonial statements of a nontestifying forensic analyst through the in-court testimony of a supervisor or other person who did not perform or observe the laboratory analysis described in the statements." *See* Petition for a Writ of Certiorari at i, *Bullcoming*, 131 S. Ct. 2705 (No. 09–10876), available at 2010 WL 3761875; *Bullcoming v. New Mexico*, 131 S. Ct. 62 (2010) (granting cert.). We decided to hold Griep's appeal in abeyance pending the outcome of *Bullcoming*.

¶ 11.   In a 5–to–4 decision, the Supreme Court reversed Bullcoming's conviction and held that

> permit[ting] the prosecution to introduce a forensic laboratory report containing a testimonial certification —made for the purpose of proving a particular fact— through the in-court testimony of a scientist who did not sign the certification or perform or observe the

the name "Williams." *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012); *State v. Williams*, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919. The cases are otherwise unrelated to each other.

test . . . . [violated Bullcoming's right] to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.

*Bullcoming*, 131 S. Ct. at 2710. Following the Supreme Court's decision in *Bullcoming*, we once again took Griep's appeal under submission, but we soon learned that the Supreme Court had granted certiorari in another potentially relevant case, *Williams v. Illinois*, 131 S. Ct. 3090 (2011) (granting cert.), on the issue of "[w]hether a state rule of evidence allowing an expert witness to testify about the results of DNA testing performed by non-testifying analysts, where the defendant has no opportunity to confront the actual analysts, violates the Confrontation Clause." Petition for a Writ of Certiorari at i, *Williams*, 132 S. Ct. 2221 (No. 10–8505), available at 2010 WL 6817830. Once again, because the Supreme Court's decision in *Williams* seemed likely to be relevant to the decision in Griep's appeal, we held Griep's case in abeyance.

¶ 12. The outcome of *Williams v. Illinois* was more a result than an opinion, with a lead opinion that "in all except its disposition" is actually a dissent from the view of the law articulated by a majority of the justices in the concurring and dissenting opinions. *Williams*, 132 S. Ct. at 2265 (Kagan, J., dissenting). Justice Thomas, who concurred in the judgment, and thus cast the deciding vote to affirm the conviction, rejected in its entirety the reasoning of the other justices who voted to affirm. *Id.* at 2255 (Thomas, J., concurring).

¶ 13. Taking Griep's appeal under consideration once again, we requested additional briefing on the impact, if any, of *Bullcoming* and *Williams*. Griep

259

argued in his supplemental briefing that *Barton* was overruled by *Williams v. Illinois,* because "five justices . . . explicitly found that the substance of the [underlying] report as introduced through the surrogate witness was offered for the truth of the matter asserted." The State countered that in both *Bullcoming* and *Williams,* the issue was admissibility of an expert's report, itself, rather than surrogate expert testimony that relied on a report.[3] Moreover, the State asserted, even if Griep were correct that a majority of the Supreme Court agrees that a surrogate expert's testimony about another analyst's test results in effect offers those results "for the truth of the matter asserted," nonetheless the fractured mosaic of the *Williams* opinion makes no clear law. By this logic, the State argues, "[n]othing in the judgment of *Williams* . . . overrules *State v. Williams* or *Barton.*"

¶ 14.   It is true that nothing in *Williams* clearly overrules our Wisconsin precedent. Nonetheless this court would prefer if possible to rely upon a more solid legal foundation than a pre-*Bullcoming/Williams* opinion by a panel of our court that did not have the benefit of the shared view of the majority of the United States Supreme Court as articulated in its most recent relevant opinions. After all, "the Supremacy Clause of the United States Constitution compels adherence to [the] United States Supreme Court" on federal law. *Jennings,* 252 Wis. 2d 228, ¶ 3.

¶ 15.   Mindful of these concerns, and in view of the fact that our state supreme court had accepted the

---

[3] In Griep's case, though Harding testified concerning the contents of the lab report in relating his conclusions about the testing of Griep's blood, the report itself was never entered into evidence.

petition for review in *State v. Deadwiller*, 2012 WI App 89, 343 Wis. 2d 703, 820 N.W.2d 149, concerning admissibility of the conclusions of a DNA profile prepared by a nontestifying expert, we certified Griep's appeal to the Wisconsin Supreme Court. That court issued its decision in *Deadwiller* shortly thereafter, determining that "on the facts of this case" and "[a]pplying the various rationales of *Williams*," there was no Confrontation Clause violation in admission of the DNA profile and that, in any event, any error was harmless. *Deadwiller*, 350 Wis. 2d 138, ¶ 2.

¶ 16.   In this context, we now decide Griep's case.

## Analysis

¶ 17.   Our state law holds that while "one expert cannot act as a mere conduit for the opinion of another," nonetheless,

> the presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders [his or] her own expert opinion is sufficient to protect a defendant's right to confrontation, despite the fact that the expert was not the person who performed the mechanics of the original tests.

*Williams*, 253 Wis. 2d 99, ¶¶ 19–20. Under this reasoning, a defendant's confrontation right is not violated "when [the surrogate], rather than the analyst who performed the tests, testifie[s] in part based on the

crime lab report containing the lab test results," concerning the nature of a tested substance.[4] *Id.*, ¶ 26.

¶ 18.   That rule and its underlying reasoning were articulated before the United States Supreme Court decided *Crawford*, which announced a new Confrontation Clause test for hearsay evidence. Under the new test, the alleged reliability of a hearsay statement is not enough to justify its admission at trial; instead, if a statement is "testimonial" hearsay, it is inadmissible unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 68.

¶ 19.   In *Barton*, this court considered how *Crawford* applies to the rule and reasoning in *Williams*, and concluded that *Williams* is still good law, because nothing "prevents a qualified expert from testifying in place of an unavailable expert when the testifying expert presents his or her own opinion." *Barton*, 289 Wis. 2d 206, ¶ 20.

¶ 20.   As Griep points out, *Barton* relied in part on reasoning that "the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion." *Id.*, ¶ 22 (citation omitted). This precise logic is one of the core disputes that fractured the court in *Williams v. Illinois*. We also note that, unlike the DNA profiles at issue in *Williams v. Illinois* and *Deadwiller*, which were produced from samples found on victims, before any suspect was identified, the analysis of Griep's blood was conducted for the very purpose of accusing Griep and creating evidence for use at trial. *See Turner*, 709 F.3d at 1192. If the DNA profile

---

[4] While the admission of the report itself was held to be an error in that case, such error was harmless. *Williams*, 253 Wis. 2d 99, ¶¶ 49–50.

in *Williams*, produced by a lab in Maryland, not for the purpose of accusing anyone in particular but to provide objective data about the DNA found on a victim, which could then be compared with a database of other DNA records, *Williams*, 132 S. Ct. at 2229, was deemed to be offered "for the truth of the matter asserted" by a majority of the justices in *Williams*, it is difficult to understand how the analysis of Griep's blood alcohol level, which was done for the sole purpose of prosecution, was not also offered "for the truth of the matter asserted."

¶ 21.   There is also some strength to the logic of Griep's argument that even when a nontestifying expert's report is not admitted into evidence, a surrogate expert's testimony may in effect put the statements in the report into evidence. *See Turner*, 709 F.3d at 1191 (noting that a surrogate expert "had no first-hand knowledge" concerning the procedures followed in the testing and the conclusion based upon that resulting data and reasoning that the surrogate "put . . . out-of-court statements before the jury").[5]

---

[5] We note that based upon this record, if we were to conclude that Harding's testimony was admitted in error, that error was not harmless. In support of its harmless error argument, the State asserts in its supplemental brief that "the trial court first made clear that it was not considering the results of the blood test," but the portion of the transcript that the State cites contains only this statement from the court, "[j]ust so we are clear, I don't have a blood test result per se. I have an opinion there was a result," which does not suggest that the court disregarded the results of the test. Instead the court seemed to be clarifying that while the underlying report was not in evidence, Harding's opinion testimony was. In any event, the court expressly stated that it "accept[ed] [Harding's] belief that the alcohol concentration was more than .08 and as a result"

¶ 22. Nonetheless, with our supreme court so recently and favorably citing *Barton, see Deadwiller*, 350 Wis. 2d 138, ¶¶ 37–40, we have no choice but to conclude that *Barton* remains the law of our state. Only the state supreme court has the power to overrule our past decisions, *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), except when United States Supreme Court precedent overrules those decisions in such clear terms that the Supremacy Clause compels our adherence to federal law instead, *Jennings*, 252 Wis. 2d 228, ¶ 43. Under the reasoning of *Barton*, the availability of a well qualified expert, testifying as to his independent conclusion about the ethanol testing of Griep's blood as evidenced by a report from another state lab analyst, was sufficient to protect Griep's right to confrontation. No binding federal precedent clearly overrules *Barton*.

¶ 23. Having said that, we note that *Barton* may not be the last word on the issue. The defendant in *Turner*, 709 F.3d 1187, the Seventh Circuit decision referred to above, has petitioned for certiorari, and the United States Supreme Court has not decided whether to grant or deny that petition, as of today's date. Various court watchers are predicting that certiorari will eventually be granted in *Turner*, or one of the other similar petitions currently being considered by the Court. *E.g., State v. Brewington*, 743 S.E.2d 626 (N.C. 2013), *petition for cert. filed,* 82 U.S.L.W. 3283 (U.S. Oct. 17, 2013) (No. 13–504); *United States v. James*, 712 F.3d 79 (2d

found Griep guilty. Hence Harding's testimony was material to the court's finding and its admission was not harmless, if it was error.

Cir. 2013), *petition for cert. filed,* 82 U.S.L.W. 3368 (U.S. Nov. 22, 2013) (No. 13–632). So, a definitive answer may be on the horizon.[6]

*By the Court.*—Judgment affirmed.

---

[6] Should a court higher than ours eventually decide the issue in a manner favorable to Griep, we recognize the imposition such an opinion might well place on prosecutors and the state crime laboratory. Some might call it an inconvenience and others might call it disturbing. It is the proverbial elephant in the room. All we can say is that the United States Supreme Court saw the same elephant and said this:

> The State . . . urge[s] that unbending application of the Confrontation Clause to forensic evidence would impose an undue burden on the prosecution . . . . The constitutional requirement, we reiterate, "may not [be] disregard[ed] . . . at our convenience," and the predictions of dire consequences, we again observe, are dubious.

*Bullcoming v. New Mexico,* 564 U.S. ___, 131 S. Ct. 2705, 2717–18 (2011) (citation omitted).