[Cite as *State v. Speelman*, 2017-Ohio-9306.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                    Court of Appeals No. L-16-1295

　　　　　Appellee                            Trial Court No. CR0201601221

v.

Cory Speelman                              **DECISION AND JUDGMENT**

　　　　　Appellant                            Decided:  December 29, 2017

* * * * *

Julia R. Bates, Prosecuting Attorney, and Matthew Simko, Assistant
Prosecuting Attorney, for appellee.

Jerome Phillips and Eric Allen Marks, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an August 31, 2016 judgment of the Lucas County

Court of Common Pleas, denying appellant's motion to suppress in the underlying

aggravated vehicular homicide case. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Cory Speelman, sets forth the following assignment of error:

FIRST ASSIGNMENT OF ERROR: THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 3} The following undisputed facts are relevant to this appeal. On Friday, August 21, 2015, at approximately 2:47 a.m., appellant was driving his motorcycle on I-75 in the city of Toledo, accompanied by a female passenger riding along on the motorcycle.

{¶ 4} At the time of the accident, appellant was driving the motorcycle at a rate of speed estimated to be at or above 102 m.p.h. in a 65 m.p.h. speed limit zone. Appellant and the passenger were not wearing helmets.

{¶ 5} While travelling at this extreme rate of speed, appellant's motorcycle slammed into the rear end of a motor vehicle traveling in front of appellant on the freeway. The impact of the collision occurred with such force that appellant's passenger ("victim") was ejected and thrust forward approximately 450 feet in front of the location where the motorcycle came to rest. The victim was killed as a result of blunt force trauma sustained in the impact of the accident.

{¶ 6} The driver of the motor vehicle struck by appellant attempted to assist and immediately summoned emergency services. When Toledo police officers arrived on the scene shortly thereafter, one of the responding officers found appellant injured so

2.

severely that the officer presumed appellant to be deceased. Appellant's eyes were closed, appellant did not respond to any commands, could not communicate, and was emitting audible gurgling noises.

{¶ 7} In conjunction with the above observations, the responding officers noted that this accident occurred shortly after closing time at area bars, that the horrific impact of the accident was consistent with appellant traveling significantly in excess of the speed limit, and upon approaching appellant immediately detected a very strong odor of alcohol. Responding fire personnel similarly smelled the strong odor of alcohol emanating from appellant.

{¶ 8} Upon arrival at St. Vincent Mercy Medical Center for emergency treatment in a successful effort to save appellant's life, the treating trauma nurse observed appellant to score a 3 on the Glasgow coma scale, a scale utilized to measure a patient's cognitive mental state. Appellant subsequently scored a 4 on the scale. Both scores reflect that appellant was unconscious and unable to communicate.

{¶ 9} R.C. 4511.191(A)(4) establishes that, "[A] person who is dead or unconscious, or who otherwise is in a condition rendering the person incapable of refusal, shall be deemed to have consented," setting forth the statutory circumstances in which consent is implied so as to permit the seizure of bodily substances in connection to the investigation of the commission of a suspected crime.

{¶ 10} Given the above-described facts and circumstances surrounding the late night, high-speed, fatal motorcycle accident, both the Toledo Police Department and the

3.

treating emergency medical personnel obtained and tested appellant's blood for the presence of alcohol at the time of the incident. The tests revealed appellant's blood-alcohol level to be in excess of the legal limit.

{¶ 11} On February 5, 2016, appellant was indicted on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1), a felony of the second degree, and one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2), a felony of the third degree. Both offenses arose from the underlying August 21, 2015 fatal motor vehicle accident.

{¶ 12} On March 7, 2016, appellant filed a motion to suppress. Appellant subsequently filed an amended motion to suppress on June 21, 2016. On June 22, 2016 a motion to suppress hearing was conducted by the trial court.

{¶ 13} At the motion to suppress hearing, the trial court heard direct testimony from the officers who arrived at the scene of the accident shortly after it occurred. The officers testified that appellant appeared to be deceased. One responding officer observed and testified that appellant's injuries were so severe that much of appellant's facial skin was torn off and gone, appellant could not communicate, could not respond to commands, and was making a distinctive gurgling noise indicative of the severity and potentially fatal nature of appellant's injuries.

{¶ 14} In addition, one of the responding officers observed appellant to have sustained a severe leg injury that appeared to have possibly severed an artery, such that the officer felt the appellant could possibly bleed out and pass away. Appellant's eyes

4.

were closed.  Appellant strongly smelled of alcohol.  Given these facts and circumstances, in conjunction with the fact that the motor vehicle accident had killed appellant's passenger, the responding officers requested a blood kit for alcohol testing as soon as possible.

{¶ 15} In the course of reaching the subject motion to suppress decision, the trial court noted that in addition to the late night timing of the fatal accident, the extremely high rate of speed that appellant was travelling, the fact that the victim was ejected with such force that she was recovered a substantial distance away from the location of impact, approximately 450 feet from the location where the motorcycle was located, and the strong odor of alcohol detected by the responding officers and fire department personnel upon appellant's person, ample evidence of probable cause existed regarding whether appellant was unlawfully operating the motorcycle under the influence of alcohol at the time of the fatal accident.

{¶ 16} In conjunction with the above, the trial court noted that R.C. 4511.191(B) expressly authorizes the withdrawal of blood from an unconscious person, whether or not the person is under arrest, when the officer has reasonable cause to believe the person was operating a motor vehicle under the influence of alcohol.  The court further found that due to the severity of appellant's injuries, the fact that appellant was unconscious and unable to communicate, appellant was incapable of refusal.

{¶ 17} The court consistently found that due to the accident killing appellant's passenger, so severely injuring appellant that his life was in jeopardy, and the fact that

5.

appellant's body was naturally processing the blood so as to potentially destroy evidence if the blood was not secured in a timely fashion, there was not a reasonable opportunity to secure a warrant prior to the blood retrieval. Appellant's motion to suppress was denied.

{¶ 18} On October 11, 2016, following the motion to suppress denial, appellant pled no contest on the first count of the two counts of aggravated vehicular homicide and was found guilty. A presentence investigation was conducted.

{¶ 19} On November 22, 2016, appellant was sentenced to a mandatory five-year term of incarceration, a mandatory three-year term of post-release control, as well as restitution and a lifetime license suspension. This appeal ensued.

{¶ 20} In the assignment of error, appellant maintains that the trial court erred in denying appellant's motion to suppress. We do not concur.

{¶ 21} It is well-established that in reviewing a disputed motion to suppress determination, this court must assume that the trier of fact is best suited to evaluate and resolve the matter. This court must defer to the trial court ruling if it is supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 22} R.C. 4511.191(A)(4) establishes that, "[A] person who is dead or unconscious, or otherwise is in a condition wondering the person incapable of refusal, shall be deemed to have consented * * * and the test or tests may be administered."

{¶ 23} In support of this appeal, appellant maintains that Ohio's implied consent statute is unconstitutional given the recent United States Supreme Court ruling in

6.

*Birchfield v. North Dakota*, 579 U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016).  We do not concur.  We have reviewed *Birchfield* and found it to be materially distinguishable from, and inapplicable to, the instant case.

{¶ 24} While *Birchfield* does stand for the proposition that a blood draw can be an unconstitutional method in order to obtain a blood alcohol concentration level in the context of a limited set of circumstances that must be present, our scrutiny of the ruling makes clear that it is only applicable in those cases in which a suspect is conscious and physically able to alternatively furnish a less intrusive breath test for the detection of the potential presence of alcohol.

{¶ 25} As clearly stated regarding blood tests in *Birchfield*, at paragraph one of the syllabus, "[T]heir reasonableness must be judged in light of the availability of the less invasive alternative of a breath test."  By contrast, the facts and circumstances of this case clearly reflect that appellant was severely injured, unconscious, unable to communicate, and clearly unable to perform a less invasive breath test.  The scenarios examined in *Birchfield* entailed parties capable of participating in an alternative breath test.  Given the unavailability of conducting a breath test in the instant case, *Birchfield* does not implicate the propriety of the subject blood test.

{¶ 26} The record of evidence reflects that appellant was driving his motorcycle with a passenger upon I-75 late at night, driving at an extremely high rate of speed, rammed into the rear of a lawfully traveling vehicle with such tremendous force that the body of the victim was ejected and recovered approximately 450 feet further from the location where the motorcycle came to a stop.

7.

**{¶ 27}** The record of evidence further reflects that upon arrival at the scene, the responding officers initially presumed appellant to also be deceased based upon his appearance and injuries, found him to be unconscious, unresponsive, incapable of communication, sustained severe injuries to his face and leg, required immediate emergency medical attention, and exhibited a strong odor of alcohol emanating from his person.

**{¶ 28}** We find that the record of evidence reflects ample competent, credible evidence in support of the disputed trial court motion to suppress determination. The record contains a wealth of probable cause evidence suggesting that appellant had been unlawfully driving the motorcycle while under the influence of alcohol.

**{¶ 29}** The record reflects that responding emergency services personnel were presented with a scenario in which, even if appellant survived, appellant was unconscious, unable to consent, and physically unable to furnish the less invasive breath test. Wherefore, we find that the trial court properly denied appellant's motion to suppress.

**{¶ 30}** On consideration whereof, we find appellant's assignment of error not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the cost of this appeal pursuant to App.R. 24.

Judgment affirmed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                JUDGE

Thomas J. Osowik, J.

              _____
James D. Jensen, P.J.       JUDGE
CONCUR.

              _____
                JUDGE