**2020 WI App 42**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:  2016AP308-CR

Complete Title of Case:

> **STATE OF WISCONSIN,**
>
> **PLAINTIFF-APPELLANT,**
>
> **V.**
>
> **DAWN M. PRADO,**
>
> **DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | June 25, 2020 |
| Submitted on Briefs: | December 6, 2019 |

| | |
|---|---|
| JUDGES: | Blanchard, Kloppenburg, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael C. Sanders*, assistant attorney general, and *Brad D. Schimel*, attorney general. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the briefs of *Anthony J. Jurek*, of *AJ Attorney, the Law Office of Anthony Jurek*, Middleton. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 25, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2016AP308-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2015CF859**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

  V.

DAWN M. PRADO,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: DAVID T. FLANAGAN, III, Judge. *Reversed*.

Before Blanchard, Kloppenburg, and Graham, JJ.

¶1 GRAHAM, J. Dawn Prado was involved in a fatal car crash, and while she was unconscious, law enforcement directed that a sample of her blood be drawn for chemical testing. The officer who directed the

blood draw did not obtain a warrant, and instead relied on the incapacitated driver provision of Wisconsin's implied consent statute. The implied consent statute provides that drivers are "deemed to have given consent" to a blood draw when they drive on a Wisconsin road and certain probable cause requirements are met. WIS. STAT. § 343.305(2) (2017-2018).[1] Its incapacitated driver provision further provides that incapacitated drivers are "presumed not to have withdrawn" the consent that is implied by statute. *See* § 343.305(3)(ar)1., (3)(ar)2., (3)(b). Prado does not dispute that the probable cause requirements were met, but she argues that the blood draw was unconstitutional because implied consent does not satisfy the Fourth Amendment, which prohibits warrantless searches unless a recognized exception to the warrant requirement applies. The circuit court suppressed the result of Prado's blood test, and the State appeals.

¶2     We are again presented with the following question: whether the "implied consent" that incapacitated drivers are deemed to have given by the implied consent statute and presumed not to have withdrawn by its incapacitated driver provision satisfies the Fourth Amendment. We have certified this question to the Wisconsin Supreme Court on three prior occasions, and it was also taken up by the Supreme Court of the United States on certiorari review of a Wisconsin appeal. However, no majority on either court has directly answered the question. The answer is of

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. For ease of reference, we refer generally to WIS. STAT. § 343.305 as the "implied consent statute," and we specifically refer to the several subsections that pertain to incapacitated drivers as the "incapacitated driver provision."

significant importance to the functioning of the Wisconsin court system. If, as the State contends, Prado had already given Fourth Amendment consent to a warrantless blood draw when she drove on a Wisconsin road, then the fact that the officer did not obtain a warrant could not be a basis for suppressing the resulting blood test. And if we accept the State's contention, when circuit courts are faced with an incapacitated driver scenario in future cases, they would have no basis for suppressing the evidence and no need to evaluate whether some other Fourth Amendment doctrine—such as exigent circumstances or good faith—applies in any individual case.

¶3    We conclude that the incapacitated driver provision is unconstitutional because the implied consent that incapacitated drivers are deemed to have given and presumed not to have withdrawn does not satisfy any exception to the Fourth Amendment's warrant requirement. However, we also conclude that the circuit court should not have suppressed the test result in this case because the State has met its burden to prove that the officer who drew Prado's blood acted in objective good-faith reliance on the constitutionality of the incapacitated driver provision. Accordingly, we reverse the order suppressing the test result and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶4    For purposes of this appeal, none of the material facts are in dispute. Two vehicles collided in Fitchburg on December 12, 2014. The police had probable cause to believe that Prado had been the driver of one

3

of the vehicles, and she was severely injured in the crash. The driver of the other vehicle was killed.

¶5 Prado was transported to a nearby hospital. While she was intubated and unconscious in her hospital bed, a police officer went through the formality of reading the "Informing the Accused" script set forth in Wisconsin's implied consent statute and asking Prado to consent to a blood draw. Unsurprisingly, the unconscious Prado did not respond, and the officer directed a nurse to draw a sample of her blood. The officer did not apply for a warrant, and he later testified that he did not believe that a warrant was needed based on the incapacitated driver provision.[2] An analysis of the blood sample revealed the presence of a controlled substance and a prohibited concentration of alcohol in Prado's blood.

¶6 Prado moved to suppress the blood test result on the grounds that the incapacitated driver provision is unconstitutional. The State countered that "under the plain language of [Wisconsin's] implied consent law," Prado had "already given consent" to a blood draw by virtue of driving a car on a Wisconsin road, and that "additional consent … is not required to authorize the taking of a sample for testing." The State also argued that even if the incapacitated driver provision is unconstitutional, the test result should not be suppressed because the officer relied on the

---

[2] There are three different subsections of WIS. STAT. § 343.305 that pertain to incapacitated drivers, subsection (3)(ar)1., (3)(ar)2., and (3)(b), and each sets forth different probable cause requirements. We need not determine which of the three subsections the officer was relying on in this case since Prado does not dispute that the blood draw was supported by probable cause.

statute in good faith. After an evidentiary hearing, the circuit court determined that the officer directed the blood draw without the authority to do so and in the absence of consent, and it suppressed the test result.

¶7     We stayed this appeal for more than two years pending resolution of other Wisconsin appeals that raised the same question about the constitutionality of the incapacitated driver provision. As discussed in greater detail below, those cases did not resolve the issue. In the most recent of these decisions, *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019), the United States Supreme Court declined to squarely address the constitutionality of the incapacitated driver provision. *See, e.g.*, *id.* at 2551 (Gorsuch, J., dissenting). Even though the State had expressly conceded in the Supreme Court that there were no exigent circumstances and advanced no argument about exigency on appeal, *see id.*, 139 S. Ct. at 2542 (Sotomayor, J., dissenting), the *Mitchell* plurality opinion determined that exigent circumstances will "almost always" justify a warrantless blood draw in intoxicated driving cases involving unconscious drivers, *id.* at 2531. We asked the parties to submit supplemental briefs in light of *Mitchell*, and the State now asserts for the first time that exigent circumstances justified the warrantless blood draw in this case.

## DISCUSSION

¶8     We begin with a general discussion of implied consent laws and the constitutional issues they raise. We then address a conflict between two of our cases, *State v. Wintlend*, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745, and *State v. Padley*, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867. After concluding that *Wintlend* has been overruled and

that the incapacitated driver provision is unconstitutional, we turn to the State's alternative arguments that the result of Prado's blood test should not be suppressed based on exigent circumstances or good faith.

## I.  Constitutional and Statutory Landscape

¶9      When law enforcement collects a blood sample for chemical testing, it has conducted a "search" governed by the Fourth Amendment of the United States Constitution.  *Schmerber v. California*, 384 U.S. 757, 767 (1966).  This appeal turns on whether Wisconsin's incapacitated driver provision is consistent with the Fourth Amendment's guarantee that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...."  U.S. CONST. amend. IV.

¶10    A warrantless search is unreasonable, and therefore unconstitutional, unless it falls within one of the "'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement."  *State v. Williams*, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also, e.g.*, *Missouri v. McNeely*, 569 U.S. 141, 148 (2013).  The warrant requirement supports fundamental separation-of-powers principles—it serves as a check on the executive branch by requiring, as a general rule, that law enforcement obtain a warrant from a neutral judicial officer before invading an individual's privacy.  *See, e.g.*, *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 316 (1972) (the warrant requirement is "an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly over-zealous executive officers' who are a part of any system of

law enforcement") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971) (plurality opinion)).

¶11 When a defendant challenges evidence that has been obtained through a warrantless search, the State bears the burden to establish that the search was justified by a recognized exception to the warrant requirement. *State v. Phillips*, 2009 WI App 179, ¶7, 322 Wis. 2d 576, 778 N.W.2d 157. Voluntary consent is one of these "established and well-delineated exceptions." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Other recognized exceptions include exigent circumstances, *see Mitchell*, 139 S. Ct. at 2540, and searches incident to arrest, *see Birchfield v. North Dakota*, 136 S. Ct. 2160, 2182-84 (2016).

¶12 Several landmark decisions over the past decade have discussed the interplay between the Fourth Amendment and state implied consent laws, and these decisions have significantly altered the legal landscape that is germane to this appeal. Indeed, the arguments of the parties in this case have shifted over the course of the proceedings to account for these changes in the law. To provide necessary context, we begin by setting forth an overview of Wisconsin's implied consent statute and its incapacitated driver provision, as well as a brief chronology of the recent cases addressing these laws.

### A. Overview of Wisconsin's Implied Consent Law and Its Incapacitated Driver Provision

¶13 "Drunk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year." *Birchfield*, 136 S. Ct. at

2166. To combat drunk driving, Wisconsin has joined all other states in passing what Wisconsin calls operating while intoxicated (OWI) laws, including laws that prohibit persons from driving with a prohibited alcohol concentration in their blood. WIS. STAT. § 346.63(1)(b); *see also Birchfield*, 136 S. Ct. at 2169-70. And like all other states, Wisconsin has also passed an "implied consent" statute, WIS. STAT. § 343.305, which is designed to facilitate law enforcement attempts to collect evidence of violations of these laws. Implied consent laws generally make cooperation with blood alcohol testing "a condition of the privilege of driving on state roads," such that "the privilege would be rescinded if a suspected drunk driver refused to honor that condition." *Birchfield*, 136 S. Ct. at 2169.

¶14 Wisconsin's implied consent statute provides that any person who "drives or operates a motor vehicle upon the public highways of this state" is "deemed to have given consent" to breath, blood, or urine tests when requested or required to do so by a law enforcement officer, as long as certain probable cause requirements are met. WIS. STAT. § 343.305(2). The statute's different subsections separately address those suspects who are capable of responding to an officer's request for a sample for chemical testing, and those suspects who are unconscious or otherwise incapable of responding to an officer's request.

¶15 When a suspect is capable of responding, the law enforcement officer is required to read the statutory "Informing the Accused" form to the suspect. WIS. STAT. § 343.305(4). This statutory script provides information about the legal consequences of consenting to testing and the legal consequences of refusing, and the officer then asks the suspect to submit to a breath, blood, or urine test. Suspects capable of

8

responding are faced with a choice: either they submit to testing, the results of which can be used against them in a future OWI prosecution, or they refuse and face civil penalties including license revocation. *See* § 343.305(9).

¶16    As we discuss in greater detail below, some defendants who submit to chemical testing under this regime later challenge its constitutionality in resulting OWI prosecutions. In these cases, the State often argues that the defendants consented to the search, and defendants often argue that their consent was coerced by the threat of license revocation. We have considered such arguments in two cases in which the suspect affirmatively agreed to a blood draw after being informed of the legal consequences of refusal. *See Wintlend*, 258 Wis. 2d 875; *Padley*, 354 Wis. 2d 545. Our Fourth Amendment analysis in *Wintlend* and *Padley* differed in critical respects that we discuss in greater detail below. For now, it suffices to say that in both cases, we determined that the suspect consented to a warrantless blood draw, and that the blood draw therefore did not violate the Fourth Amendment.

¶17    A different situation is presented when a suspect is "unconscious or otherwise not capable of withdrawing consent." WIS. STAT. § 343.305(3)(ar)1., (3)(ar)2., (3)(b). In the incapacitated driver situation, Wisconsin's implied consent statute does not require the officer to ask for the suspect's consent to chemical testing. *See* WIS. STAT. § 343.305(4); *see also State v. Disch*, 129 Wis. 2d 225, 233-34, 385 N.W.2d 140 (1986) (explaining that the statute does not require officers to read the Informing the Accused script to incapacitated drivers or ask them to give a sample or take a test because "it would be useless" to do so).

Instead, pursuant to the incapacitated driver provision, the incapacitated suspect "is presumed not to have withdrawn consent," and "one or more samples [of breath, blood, or urine] may be administered to the person." *See* § 343.305(3)(ar)1., (3)(ar)2., (3)(b).[3]

¶18    Accordingly, on its face, the incapacitated driver provision purports to authorize blood draws of incapacitated drivers solely based on statutorily implied consent.  *See Disch*, 129 Wis. 2d at 233-34.[4]  In contrast to the conscious drivers discussed above, incapacitated drivers cannot consent at the time the blood is drawn—the suspect is not capable of responding to the officers at that time, much less consenting to or withdrawing consent for a search.  Instead, if consent can be said to authorize a blood draw of an incapacitated driver, it has to be consent given prior to the onset of the driver's incapacitation.

---

[3] We recognize that samples are not generally thought of as something that can be "administered" to a person.  This awkward phrasing was introduced when the statute was amended by 1989 Wis. Act 105; an earlier version of the statute provided that if the person was unconscious or otherwise not capable of withdrawing consent, "a test may be administered to the person." *See State v. Disch*, 129 Wis. 2d 225, 231, 385 N.W.2d 140 (1986) (quoting the 1979-80 version of the statute).  Neither party asserts that the phrasing of the current version materially changes the meaning of the statute or renders it ambiguous.

[4] In this case, in an effort to avoid an interpretation that would render the incapacitated driver provision unconstitutional, the circuit court determined that the provision does not actually authorize warrantless searches of incapacitated drivers.  To support this interpretation, the court cited our decision in *Padley*.  Yet *Padley* itself acknowledges that its interpretation of the implied consent statute does not logically extend to incapacitated drivers since they are incapable of withdrawing consent, and that "at least in the context of an incapacitated driver … implied consent is deemed the functional equivalent of actual consent." *State v. Padley*, 2014 WI App 65, ¶39 n.10, 354 Wis. 2d 545, 849 N.W.2d 867.  On appeal, both parties acknowledge that the incapacitated driver provision purports to authorize warrantless searches of drivers who are incapable of withdrawing the consent implied by statute.

¶19   Thus, the incapacitated driver provision squarely presents the question of whether the consent that drivers are deemed to have given by the implied consent statute and presumed not to have withdrawn by its incapacitated driver provision satisfies an exception to the Fourth Amendment's warrant requirement.  If it does, the incapacitated driver provision authorizes warrantless searches that are consistent with the Fourth Amendment.  But if it does not, warrantless blood draws from incapacitated suspects are unconstitutional unless the circumstances surrounding the blood draws satisfy a different exception to the warrant requirement, such as exigent circumstances.

### B.  Landmark Fourth Amendment Implied Consent Decisions

¶20   We now provide a chronological overview of significant cases from the Wisconsin Supreme Court and the Supreme Court of the United States that address some of the Fourth Amendment implications of implied consent laws.  Our overview here is brief, and we discuss these cases in greater detail as needed below.

¶21   In 1993, our supreme court determined that a warrantless blood draw of a driver who was lawfully arrested for drunk driving was constitutional based on the exigent circumstances exception to the warrant requirement.  *See* ***State v. Bohling***, 173 Wis. 2d 529, 494 N.W.2d 399 (1993).  The ***Bohling*** court explained that the exigency posed by the natural dissipation of alcohol from the bloodstream obviated the need to obtain a warrant under ordinary circumstances.  ***Id.*** at 547-48.  For two decades following ***Bohling***, the constitutionality of Wisconsin's implied consent law appeared to be a settled matter; there was little need to consider

11

whether the implied consent statute itself authorized constitutional searches because such searches could generally be justified on the basis of exigent circumstances. *See, e.g.*, **State v. Kennedy**, 2014 WI 132, ¶28, 359 Wis. 2d 454, 856 N.W.2d 834 (characterizing **Bohling** as creating a "per se" exigency rule that "remained the law in Wisconsin for 20 years").

¶22　This assumption was upended in 2013, when the United States Supreme Court expressly overruled **Bohling** and similar precedents in other states. *See* **McNeely**, 569 U.S. at 147 n.2. The **McNeely** Court spoke favorably about the efficacy of implied consent laws in combating drunk driving. *Id.* at 161-62. It nevertheless concluded that the warrant exception for exigent circumstances always requires consideration of the "totality of the circumstances," *id.* at 151, and that the dissipation of alcohol is not a "per se exigency" whenever an officer has probable cause to believe a person has been driving under the influence of alcohol, *id.* at 145. The **McNeely** Court held that claims of exigency must be subjected to a "careful case-by-case evaluation of reasonableness," *id.* at 158, and that officers must obtain a warrant for a blood draw so long as doing so does not "significantly undermin[e] the efficacy of the search," *id.* at 152. In **McNeely**'s wake, it became necessary for law enforcement agencies in Wisconsin to develop protocols for obtaining electronic warrants from on-duty judges when drivers refused to consent to chemical testing and no other exception to the warrant requirement applied.

¶23　The blood draw in this case took place in December 2014, nearly two years after **McNeely** was decided. **McNeely** is important to our analysis because, like some other defendants in her situation, Prado argues

that Wisconsin's incapacitated driver provision is a per se exception to the warrant requirement, and that it is unconstitutional based on *McNeely*.

¶24 Then, in 2016, the United States Supreme Court decided *Birchfield*, 136 S. Ct. 2160. The *Birchfield* Court addressed three consolidated cases with differing facts, but the commonality was that each case involved a driver who was arrested on suspicion of drunk driving and was asked at the scene to submit to chemical testing under a state implied consent law. *Id.* at 2170-72. This time, the Court's analysis centered on a different Fourth Amendment warrant exception—search incident to arrest. The Court concluded that a breath test may be administered as a permissible search incident to a lawful arrest for intoxicated driving, but a blood test may not. *Id.* at 2185. The Court distinguished between breath and blood tests on the grounds that blood tests are significantly more intrusive than breath tests, and that drivers have a greater privacy interest in their blood than in their breath. *Id.* The *Birchfield* Court also addressed whether drivers can be penalized for refusing to submit to a blood test, and it held that states may not impose a criminal penalty if a driver refuses to take a blood test. *Id.* at 2186-87.

¶25 As the State acknowledges, *Birchfield* is important to our analysis because it addresses consent. More specifically, the blood draw in one of its consolidated cases, *Beylund*, had been justified by the state supreme court on the ground that Beylund had "voluntarily consented" under the state's implied consent law. *Beylund v. Levi*, 2015 ND 18, ¶15, 859 N.W.2d 403, *vacated and remanded sub nom. Birchfield*, 136 S. Ct. 2160. As we explain below, Prado argues that the Court's discussion of

constitutional limitations on state implied consent laws shows that Wisconsin's incapacitated driver provision is unconstitutional.

¶26    Around the same time that **Birchfield** was decided, this court started seeing appeals that squarely presented the question at issue in this case:  whether the constitutionality of Wisconsin's incapacitated driver provision can be upheld on the grounds that implied consent, by itself, satisfies the Fourth Amendment.  On three occasions, we certified this question to the Wisconsin Supreme Court.[5]  The resulting decisions have been fractured, and our supreme court has not issued any majority opinion resolving this question.  In response to our first certification, **Howes**, the court issued a split decision, with a plurality of justices declining to address the constitutionality of the incapacitated driver provision but stating that the blood draw was justified by exigent circumstances.  **State v. Howes**, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812.[6]  In response to our second certification, **Mitchell**, our supreme court did address the certified question,

---

[5] *See* **State v. Howes**, No. 2014AP1870-CR, certification filed (WI App Jan. 28, 2016); **State v. Mitchell**, No. 2015AP304-CR, certification filed (WI App May 17, 2017); **State v. Hawley**, No. 2015AP1113-CR, certification filed (WI App Nov. 21, 2018).

[6] Three justices joined the **Howes** lead opinion.  Two justices concurred in the judgment but would have concluded that the incapacitated driver provision is constitutional because statutorily implied consent, by itself, satisfies the Fourth Amendment.  **State v. Howes**, 2017 WI 18, ¶¶52-87, 373 Wis. 2d 468, 893 N.W.2d 812 (Gableman, J, concurring, joined by Ziegler, J.).  Two justices dissented and would have concluded the opposite, *id.*, ¶¶134-154 (Abrahamson, J, dissenting, joined by A.W. Bradley, J.), and one justice concurred in the judgment but agreed with the dissent that the incapacitated driver provision was unconstitutional, *id.*, ¶88 (Kelly, J, concurring).

but again issued a split decision,[7] and the court's various writings were later vacated by the United States Supreme Court. *State v. Mitchell*, 2018 WI 84, 383 Wis. 2d 192, 914 N.W.2d 151, *vacated and remanded*, 139 S. Ct. 2525 (2019). The Wisconsin Supreme Court declined to accept our third and final certification in *State v. Hawley*, No. 2015AP1113-CR, certification filed (WI App Nov. 21, 2018), certification declined (Sept. 3, 2019).

¶27 When the United States Supreme Court granted certiorari in *Mitchell*, the natural expectation was that the court would resolve the constitutionality of the incapacitated driver provision. After all, *Mitchell* involved an unconscious driver, the State expressly conceded that there was no exigency, and the sole argument advanced by the State was that the blood draw was authorized by the driver's implied consent. *Mitchell*, 139 S. Ct. at 2545-46 (Sotomayor, J., dissenting). However, like our supreme court in *Howes*, the United States Supreme Court declined to squarely address the constitutionality of the incapacitated driver provision. *Id.* Justice Alito's plurality opinion addressed implied consent only briefly, when it remarked that "[o]ur decisions [regarding implied consent laws]

---

[7] The three justices who joined the *Mitchell* lead opinion stated that implied consent satisfied the Fourth Amendment. *State v. Mitchell*, 2018 WI 84, ¶¶1-66, 383 Wis. 2d 192, 914 N.W.2d 151, *vacated and remanded*, 139 S. Ct. 2525 (2019). Two justices dissented, stating the opposite. *Id.*, ¶¶87-113 (A.W. Bradley, J, dissenting, joined by Abrahamson, J.). Two justices concurred in the judgment, stating that "the consent implied by WIS. STAT. § 343.305 cannot justify the blood draw," *id.*, ¶75 (Kelly, J, concurring, joined by R.G. Bradley, J.), but that a blood draw from an incapacitated driver can be justified as a search incident to arrest, *id.*, ¶¶79-80. Although four out of seven justices appeared to agree that implied consent alone did not satisfy the Fourth Amendment, there was no majority opinion to that effect. *See id.*, ¶88 n.1 (A.W. Bradley, J, dissenting).

have not rested on the idea that these laws do what their popular name might seem to suggest—that is, create actual consent to all the searches they authorize." *Id.* at 2533.

¶28 Rather than deciding the case on the basis of statutorily implied consent, the Court remanded for determination of whether the blood draw that took place was justified by exigent circumstances. *Id.* at 2537-39 (plurality opinion). Although a majority of five justices agreed with this bottom line, their reasoning differed. Four justices determined that exigent circumstances "almost always" permit a warrantless blood draw from an unconscious driver, and articulated a new test that shifted the burden to the defendant to prove that exigent circumstances were not present.[8] A fifth justice stated that *McNeely*'s rule against per se exceptions should be abandoned, and that the dissipation of alcohol always presents an exigent circumstance. *Id.* at 2539 (Thomas, J., dissenting). Whatever the meaning of the fractured *Mitchell* decision, it is important to our analysis here because, as mentioned, the State now argues that we should overlook its failure to raise exigent circumstances below and determine that the blood draw in this case was justified on the basis of exigency.

---

[8] According to the *Mitchell* plurality, the defendant would bear the burden to show that their blood "would not have been drawn if police had not been seeking [blood alcohol] information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2539 (2019); *but see State v. Key*, No. 2017-001013, 2020 WL 2463063, at *5 (S.C. May 13, 2020) (declining to follow *Mitchell* and shift the burden of proof to the defendant because the South Carolina Supreme Court could not "sponsor the notion of requiring a defendant to prove that [her Fourth Amendment right to be free of unreasonable searches]—a right she already possesses—exists in any given case").

## II. The Constitutionality of the Incapacitated Driver Provision

¶29 With this background in mind, we turn to the parties' arguments about the blood draw that occurred in this case. The parties agree that the incapacitated driver provision purports to authorize warrantless blood draws from incapacitated drivers without any need to show that exigent circumstances are present. Where the State and Prado differ is whether it is constitutional for a statute to do so.

¶30 Prado contends that the incapacitated driver provision is unconstitutional because implied consent does not satisfy the Fourth Amendment.[9] She acknowledges that implied consent is an "important and useful legal fiction" that helps facilitate police investigations of allegedly impaired drivers. She nevertheless argues that incapacitated drivers are unable to give "actual consent"[10] to a search, and that implied consent does

---

[9] A party may challenge a statute as unconstitutional on its face or as applied to the facts of the particular case. *State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63. Although Prado does not specify whether she intends her challenge to be facial or as-applied, we understand her to be arguing that the incapacitated driver provision is facially unconstitutional.

[10] Consistent with much of the authority on this topic, the parties often frame the question as whether "implied consent" is "actual consent." When courts use the term "actual consent" in this context, they are often referring to consent that is voluntary in light of the totality of the circumstances and therefore satisfies the traditional warrant exception for consent. *See, e.g.*, *Padley*, 354 Wis. 2d 545, ¶40; *see also* *Williams v. State*, 296 Ga. 817, 821, 771 S.E.2d 373 (2015) (distinguishing between "compliance with the implied consent statute" and "the constitutional question of whether a suspect gave *actual* consent for the state-administered testing"); *People v. Lopez*, 46 Cal. App. 5th 317, 326, 260 Cal. Rptr. 3d 18 (Ct. App. 2020) (noting that California's implied consent law "is explicitly designed to allow the driver ... to make the choice as to whether [to] give or decline to give *actual* consent to a blood draw when put to the choice"); *McCoy v. North Dakota Dep't of Transp.*, 2014 ND 119, ¶23, 848 N.W.2d 659 ("[T]he deputy also asked for and received actual consent from McCoy after reading the implied consent advisory."). But on occasion, courts also use the term "actual consent" to refer to

(continued)

17

not satisfy any exception to the warrant requirement. Prado relies heavily on *McNeely* and *Birchfield*, and we take her to be arguing that after these cases, searches justified exclusively on the basis of implied consent are unconstitutional.

¶31 The State counters that the fact that an incapacitated driver is unable to express "actual consent" at the time of the search is inconsequential, since the driver has already given implied consent. That is, according to the State, warrantless implied consent searches are constitutional because drivers give "voluntary implied consent" to a chemical test "by choosing to drive on a Wisconsin highway."

¶32 It is not clear which of two arguments the State intends to make in this regard. The State may be arguing that statutorily implied consent satisfies what we refer to here as the "traditional" warrant exception for consent, discussed in numerous cases including *Schneckloth*, 412 U.S. 218, and *State v. Artic*, 2010 WI 83, 327 Wis. 2d 392, 786 N.W.2d 430. To satisfy the traditional exception, the State must show that the consent was "voluntary"—that is, not the "product of duress or

---

consent that is *expressed* by an affirmative statement, as distinguished from consent *implied* by conduct, while maintaining that *both* express and implied consent can satisfy the traditional consent exception to the warrant requirement. *See People v. Arredondo*, 199 Cal. Rptr. 3d 563, 571 (Ct. App.), *as modified on denial of reh'g* (Mar. 24, 2016), *review granted and opinion superseded*, 371 P.3d 240 (Cal. 2016) (stating that the phrase "'implied consent' is misleading, if not inaccurate" because even though "consent sufficient to sustain a search may be 'implied' as well is explicit, … it is nonetheless *actual* consent, 'implied' only in the sense that it is manifested by *conduct* rather than words"). To avoid potential ambiguity, we do not use the term "actual consent" in this opinion except when quoting the parties or other courts, which generally use this term in the first sense described above: consent that satisfies the traditional warrant exception.

coercion"—and voluntariness is "determined from the totality of the circumstances." *Schneckloth*, 412 U.S. at 227; *Artic*, 327 Wis. 2d 392, ¶33. Alternatively, the State may be arguing that statutorily implied consent is *itself* an independent warrant exception that does not need to satisfy any totality of the circumstances test. The State contends that implied consent is or should be recognized as a warrant exception because "Wisconsin courts have long recognized" that implied consent satisfies the Fourth Amendment, and because implied consent allows the State "to more easily obtain samples for chemical testing when a subject operates while under the influence on its highways …." We address both of these arguments below.

¶33 But before we can address any of the constitutional arguments advanced by both parties, we must pause to address a threshold issue—whether we can even decide if the incapacitated driver provision is constitutional in light of a conflict between our prior decisions. *See Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997) (the court of appeals cannot overrule its own precedent).

## A. The Conflict Between *Wintlend* and *Padley*

¶34 One reason that we certified similar cases in the past is due to a conflict between two of our opinions, *Wintlend* and *Padley*. These cases provide conflicting interpretations of the implied consent statute, and they appear to point in different directions about the incapacitated driver provision's constitutionality. According to *Wintlend*, drivers give implied consent at the time they apply for a Wisconsin license, 258 Wis. 2d 875, ¶13, and this implied consent itself authorizes warrantless searches that

satisfy the Fourth Amendment, *id.*, ¶¶10, 17. By contrast, according to *Padley*, the implied consent statute does not by itself authorize searches of conscious drivers. *Padley*, 354 Wis. 2d 545, ¶42. Instead, it is the "actual consent" that the driver gives at the scene of an accident or arrest that authorizes the search and satisfies the Fourth Amendment. *Id.*, ¶38.

¶35 This apparent conflict between *Wintlend* and *Padley* is important to an analysis of the issues in the present case. If we were bound to follow *Wintlend*, then we would be compelled to conclude that the incapacitated driver provision passes Fourth Amendment scrutiny. This is because, according to *Wintlend*'s logic, it would not matter whether a driver is capable of consenting at the scene of an accident or an arrest—the Fourth Amendment was already satisfied when the driver applied for a license and gave implied consent. But if we were instead bound to follow *Padley*, it is not clear how an incapacitated driver's statutorily implied consent could satisfy the Fourth Amendment.

¶36 When our own precedent conflicts, we have been instructed to certify the issue to the Wisconsin Supreme Court. *See Marks v. Houston Cas. Co.*, 2016 WI 53, ¶80, 369 Wis. 2d 547, 881 N.W.2d 309. But as discussed above, we certified this issue three times, and the Wisconsin Supreme Court did not resolve the conflict between *Wintlend* and *Padley* or decide the constitutionality of the incapacitated driver provision. Meanwhile, in cases such as this one, the State continues to assert that no warrant was needed as a result of the consent implied by statute, and defendants continue to assert that implied consent does not satisfy the Fourth Amendment. Under these unusual circumstances, we conclude that it is appropriate for this court to provide an answer.

¶37    The court of appeals cannot overrule its own precedent. *Cook*, 208 Wis. 2d at 189-90.  Here, however, we agree with Prado that *Wintlend* was overruled by the United States Supreme Court in *Birchfield*. Although we may not overrule our own decisions, we may recognize that one of our decisions has been overruled when "United States Supreme Court precedent overrules those decisions in such clear terms that the Supremacy Clause compels our adherence to federal law instead." *State v. Griep*, 2014 WI App 25, ¶22, 353 Wis. 2d 252, 845 N.W.2d 24, *aff'd*, 2015 WI 40, 361 Wis. 2d 657, 863 N.W.2d 567.[11]   We now explain our conclusion that *Wintlend* was overruled by *Birchfield*.  To do so we summarize each case then explain the ways in which *Wintlend* is incompatible with *Birchfield*.

¶38    *Wintlend* involved a conscious driver who was arrested on probable cause for driving while intoxicated.  *Wintlend*, 258 Wis. 2d 875, ¶2.  The arresting officer informed Wintlend that under Wisconsin law, he was deemed to have consented to chemical testing and would incur civil penalties if he withdrew consent.  *Id.*  Wintlend agreed to a blood test, but later sought to suppress the result on grounds that his consent had been coerced by the threat of license revocation.  *Id.*  To support his argument, Wintlend relied on cases including *Schneckloth* that addressed the

---

[11] *See also* *State v. Jennings*, 2002 WI 44, ¶18, 252 Wis. 2d 228, 647 N.W.2d 142.  *Jennings* explained that we need not certify cases that present a conflict between Wisconsin Supreme Court and United States Supreme Court precedent because "[a]ll state courts, of course, are bound by the decisions of the United States Supreme Court on matters of federal law."  *Id.*  We see no reason that this principle should not apply equally when the conflict is between our own precedent and precedent from the United States Supreme Court.

traditional warrant exception for voluntary consent. *See* Brief and Appendix of Defendant-Appellant at 36-39, *Wintlend*, 258 Wis. 2d 875 (No. 02-0965).

¶39 We accepted the premise that the implied consent statute requires drivers to "surrender" Fourth Amendment rights. *Id.*, ¶10. However, we stated that this alone "does not automatically lead to a finding of unconstitutionality" because "[i]n the Fourth Amendment context, only unreasonable governmental intrusions are constitutionally proscribed." *Id.* We did not address Wintlend's arguments about the traditional warrant exception for consent—instead, in our view, "the real question" was whether the "coercive nature of the implied consent statute" was reasonable. *Id.*, ¶¶10, 11.

¶40 We ultimately concluded that "the statute's coerciveness is not unreasonable" "at whatever point the motorist is coerced into making a decision, be it at the time the person applies for and obtains a license, or when the person begins operating the vehicle on each particular occasion, or after arrest." *Id.*, ¶18. We initially determined that "the time of consent" was when "a license is obtained,"[12] and that no coercion occurs at that time because Wintlend could choose to travel by means other than driving. *Id.*,

---

[12] For this proposition, we cited *State v. Neitzel*, 95 Wis. 2d 191, 289 N.W.2d 828 (1980), a case addressing whether drivers have a Fifth Amendment right to counsel when they are asked to take a chemical test under the implied consent statute. *Neitzel* states, among other things, that "[b]y reason of the implied consent law," when a driver "applies for and receives an operator's license," the driver "submits to the legislatively imposed condition on [their] license that, upon being arrested and issued a citation for driving under the influence of an intoxicant … [the driver] consents to submit" to chemical testing. *Id.* at 193.

¶13. But we also concluded that even if Wintlend's consent was given at the scene in response to the officer's warning, that "coercive event" was not unreasonable. *Id.*, ¶17. We reasoned that "the bodily intrusion" involved with a blood test is "minimal" because blood draws are "safe, relatively painless and commonplace … compared with other, much more intrusive state actions." *Id.* We then concluded that this minimal intrusion was counterbalanced by the government's strong interest in preventing intoxicated driving. *Id.*, ¶18.

¶41 In summary, we read *Wintlend* to set forth the following three principles: (1) a blood test is a "minimal" intrusion that can be coerced if there is a sufficiently compelling State purpose justifying the intrusion; (2) drivers give "implied consent" to chemical testing at the time they apply for a license—long before the search requested by an officer is contemplated—and this implied consent satisfies the Fourth Amendment; and (3) the implied consent statute does not violate the Fourth Amendment because even if the statute is coercive, that coercion is reasonable. When we set forth these three principles in *Wintlend*, we did not cite any cases that address the traditional warrant exception for voluntary consent, and we did not conduct any analysis of the "totality of the circumstances" at the scene of the arrest.

¶42 We now turn to whether these three principles can survive the United States Supreme Court's decision in *Birchfield*. One of the cases that was consolidated in *Birchfield*, the *Beylund* matter, is important here because its facts are similar to those in *Wintlend*. *See Beylund v. Levi*, 2015 ND 18, ¶1, 859 N.W.2d 403, *vacated and remanded sub nom. Birchfield*, 136 S. Ct. 2160. In *Beylund*, the defendant was arrested for

driving while intoxicated, and the arresting officer read him an implied consent advisory, which warned that it was a crime to refuse to take a blood test under North Dakota law. *Id.*, ¶¶3, 15. Beylund agreed to the test at the scene, but later argued that the search violated the Fourth Amendment because his consent was coerced by the threat of criminal penalties.[13] *Id.*, ¶12. The North Dakota Supreme Court rejected this argument on the grounds that "Beylund voluntarily consented to the chemical blood test administered by the police officer," and that North Dakota's implied consent scheme does not violate the Fourth Amendment. *Id.*, ¶1.

¶43 The United States Supreme Court vacated the ***Beylund*** opinion. ***Birchfield***, 136 S. Ct. at 2187. As it explained, the state court's assertion that Beylund gave voluntary consent had been "based on the erroneous assumption that the State could permissibly compel" blood tests. ***Id.*** The Court remanded for consideration of whether Beylund had voluntarily consented to the blood test based on the totality of the circumstances: "Because voluntariness of consent to a search must be 'determined from the totality of all the circumstances,' we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory." ***Id.*** at 2187 (quoting ***Schneckloth***, 412 U.S. at 227). That is, the Court instructed North Dakota to apply the well-known test governing the traditional consent exception to the warrant

---

[13] As noted above, Wisconsin statutes impose civil penalties, not criminal penalties, for refusal to submit to a chemical test, and therefore the arguments advanced by Beylund and Wintlend differed in that regard. In all other material respects, Beylund and Wintlend challenged the voluntariness of their consent on the same grounds.

requirement, which forbids coercion and requires that consent be given "voluntarily" based on analysis of "the totality of the circumstances." *See also* **State v. Phillips**, 218 Wis. 2d 180, 197-98, 577 N.W.2d 794 (1998) (describing the traditional totality of the circumstances test for consent).

¶44 For reasons we now explain, *Wintlend*'s three principles cannot survive the United States Supreme Court's analysis in *Birchfield*.

¶45 First, *Wintlend* described blood draws as "minimal" bodily intrusions, but this is incompatible with *Birchfield*, which explained that blood draws are "significantly more intrusive" than breath tests. As *Birchfield* notes, a blood test is a "compelled physical intrusion beneath the defendant's skin and into his veins" that "places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple [blood alcohol content] reading." *Birchfield*, 136 S. Ct. at 2184, 2178. Following *Birchfield*, it is apparent that blood tests implicate important privacy concerns that we disregarded in *Wintlend*.

¶46 Second, *Wintlend* concluded that drivers give implied consent to future blood draws at the time they apply for licenses,[14] thereby satisfying the Fourth Amendment, but this is plainly incompatible with *Birchfield*. If Beylund had already given implied consent that satisfied the

---

[14] The State concedes that this part of *Wintlend* is no longer good law, and that "Wisconsin courts have recognized that the time of consent is when a person drives on a Wisconsin highway." *See* **State v. Nordness**, 128 Wis. 2d 15, 28, 381 N.W.2d 300 (1986) (stating that under the implied consent statute, "those who drive consent to chemical testing").

Fourth Amendment at the time he applied for a license (or alternatively, when he drove on North Dakota roads on the night in question), the United States Supreme Court would not have remanded for proceedings "to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory." *Id.* at 2187. The content of the implied consent advisory—like any other circumstance at the scene of the arrest—would have been inconsequential because the Fourth Amendment would have been satisfied before any of those circumstances came to pass. Yet *Birchfield* explicitly required the state court to consider the circumstances surrounding the stop when determining whether the warrantless blood draw made pursuant to an implied consent law was consistent with the Fourth Amendment.

¶47 Third, after *Birchfield*, it is clear that *Wintlend* applied the wrong test to determine whether the "consent" contemplated by an implied consent statute satisfies the Fourth Amendment. Both cases involve drivers who claimed that their consent was invalid because it was coerced by the threat of penalties under an implied consent statute. As discussed above, the court in *Wintlend* assumed that Wisconsin's implied consent statute was "coercive," and considered whether the statute's "coercive nature" was "reasonable." But *Birchfield* does not countenance any such test. The Court instead remanded for proceedings to apply the test for the traditional warrant exception for consent—whether the driver's consent was "voluntary" based on the "totality of the circumstances." *Birchfield*, 136 S. Ct. at 2187. This test expressly forbids the coercion that *Wintlend* says it would permit. *See, e.g.*, *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("Where there is coercion there cannot be consent.").

26

¶48     Accordingly, *Birchfield* instructs that the test for whether a driver's consent to a blood draw satisfies the Fourth Amendment is whether the consent was voluntary (that is, not coerced) based on the totality of the circumstances.  And after *Birchfield*, there can be no question that this is true even in the context of an implied consent statute that purports to authorize a warrantless search based on a driver's previously-given implied consent.  The test articulated in *Wintlend* is incompatible with the test articulated in *Birchfield* in an identical context.

¶49     For these reasons, we conclude that *Birchfield* overruled *Wintlend* "in such clear terms that the Supremacy Clause compels our adherence" to *Birchfield* instead.  *Griep*, 353 Wis. 2d 252, ¶22.

## B.  The Parties' Arguments About Implied Consent

¶50     We now turn to the parties' arguments about whether the circuit court properly suppressed the result of Prado's blood test.  An order granting or denying a suppression motion generally presents "a mixed question of law and fact to which we apply a two-step standard of review." *State v. Tomaszewski*, 2010 WI App 51, ¶5, 324 Wis. 2d 433, 782 N.W.2d 725.  Here, however, since the material facts are undisputed, all that is left is a question of law:   whether the incapacitated driver provision is constitutional. *See State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.  Statutes are presumed to be constitutional, and "if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality." *Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶18, 237 Wis. 2d 99, 613 N.W.2d 849.

¶51   As   we   have   explained,   a   warrantless   search   is unconstitutional unless it satisfies one of the "specifically established and well-delineated" exceptions to the warrant requirement. *Williams*, 255 Wis. 2d 1, ¶18.   The State asserts that drivers give "voluntary implied consent" to a chemical test "by choosing to drive on a Wisconsin highway," but as mentioned above, it is not clear whether the State means to argue that statutorily implied consent satisfies the traditional warrant exception for voluntary consent, or is itself an independent exception to the warrant requirement.   We address these arguments in turn.

### 1.   The Traditional Warrant Exception for Consent

¶52   To the extent the State is arguing that searches authorized by WIS. STAT. § 343.305 satisfy the traditional warrant exception for consent, this argument fails to take the totality of circumstances into account, and it is foreclosed by the Supreme Court's decisions in *Birchfield* and *Mitchell*.

¶53   As discussed above, the traditional warrant exception requires that consent be "voluntary" based upon an evaluation of the "totality of all the circumstances." *Schneckloth*, 412 U.S. at 227.  It is the State's burden to   prove   that   the   defendant   gave   voluntary   consent   by   "clear   and convincing evidence." *State v. Blackman*, 2017 WI 77, ¶54, 377 Wis. 2d 339,   361,   898   N.W.2d   774.   When   considering   the   totality   of   the circumstances, courts evaluate "the circumstances surrounding the consent

and the characteristics of the defendant; no single factor controls." *Artic*, 327 Wis. 2d 392, ¶33.[15]

¶54 The State asserts that the consent implied by WIS. STAT. § 343.305 is "voluntary"—presumably because drivers make a voluntary choice to drive a vehicle on Wisconsin roads. However, the State does not once mention the "totality of the circumstances" in any of its briefing, and it makes no argument that the statute takes into account the "totality of the circumstances surrounding the consent and the characteristics of the defendant." *Artic*, 327 Wis. 2d 392, ¶33. This may be because no such argument can reasonably be made. The statute takes into account only a very *limited* set of circumstances: whether the person was driving on a Wisconsin road, and whether certain probable cause requirements have been met. None of the statutory requirements have anything to do with the characteristics of the defendant or the interaction between the police and the defendant at the scene of the blood draw.

¶55 More is required, as demonstrated by *Birchfield*'s remand instructions in the *Beylund* matter. *Birchfield*, 136 S. Ct. at 2186. As discussed at length above, these remand instructions show that courts must

---

[15] Among other things, courts consider (1) whether the police used deception, trickery, or misrepresentation to persuade the defendant to consent; (2) whether the police threatened, physically intimidated, or "punished" the defendant by the deprivation of something like food or sleep; (3) whether the conditions attending the request were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded; (5) characteristics of the defendant such as age, intelligence, education, physical and emotional condition, and prior experience with police; and (6) whether the police informed the defendant that consent could be refused. *State v. Artic*, 2010 WI 83, ¶33, 327 Wis. 2d 392, 786 N.W.2d 430.

consider any relevant circumstances that surround the blood draw itself when determining whether a driver voluntarily consented, and that drivers do not give consent that satisfies the traditional warrant exception simply by the voluntary act of driving on a Wisconsin road. *See supra* ¶¶43, 47.

¶56 The United States Supreme Court's discussion in *Mitchell* reinforces our conclusion that implied consent does not satisfy the traditional warrant exception for voluntary consent. As discussed above, the *Mitchell* Court was squarely presented with the same question that is at issue in this case—whether implied consent satisfies the Fourth Amendment. The plurality opinion and the leading dissent disagreed on many issues, yet both agreed that the Court has never recognized that implied consent satisfies the traditional warrant exception for consent. As discussed above, Justice Alito's plurality opinion explained that prior Court decisions approving of implied consent laws "have not rested on the idea that these laws do what their popular name might seem to suggest—that is, create actual consent to all the searches they authorize."[16] *Mitchell*, 139 S. Ct. at 2533 (plurality opinion of Alito, J., joined by Roberts, C.J., Breyer, and Kavanaugh, JJ.). Justice Sotomayor's dissent agreed: "The plurality does not rely on the consent exception here. …. With that sliver of the plurality's reasoning I agree." *Id.* at 2545 (Sotomayor, J., dissenting, joined by Ginsburg and Kagan, JJ.). Of the four separate opinions written

---

[16] As noted above in footnote 10, courts generally use the term "actual consent" to refer to consent that satisfies the traditional warrant exception for consent, but also sometimes use it to mean consent that is "expressed" by words rather than "implied" by conduct. *Mitchell* could not mean "express consent" here, since it is difficult to fathom how a statute could "create" express consent.

in *Mitchell*, not one endorsed the State's position that implied consent, by itself, satisfies the Fourth Amendment.

## 2. Implied Consent as an Independent Warrant Exception

¶57   Alternatively, the State may be arguing that the incapacitated driver provision is constitutional because there is, or perhaps should be, a separate warrant exception for statutorily implied consent.[17]   According to the State, "Wisconsin courts have long recognized that under the implied consent law, a person gives consent to chemical testing by his or her conduct …."   The State contends that even though implied consent is "created by the Legislature," it "incorporates the basic consent precept of voluntariness" because it is a fair deal that benefits drivers and law enforcement alike:

> When a driver gives consent, he or she is conscious, and is free to choose whether to drive.  …. [Implied consent] is in effect a deal:  in exchange for driving in Wisconsin, a person impliedly consents to take a

---

[17]  Prosecutors in other jurisdictions have made similar arguments in support of a warrant exception for statutorily implied consent.  *See, e.g.*, *Commonwealth v. Myers*, 640 Pa. 653, 672, 164 A.3d 1162 (2017) (plurality opinion) (noting the state's argument that "implied consent may serve as an exception to the warrant requirement"); *State v. Henry*, 539 S.W.3d 223, 234 (Tenn. Crim. App. 2017) ("The State argues that implied consent to testing, by virtue of Tennessee's implied consent statute, operates as an exception to the warrant requirement.").   And at least one court appears to have recognized an independent warrant exception for statutorily implied consent.  In *State v. Rios*, 160 Idaho 262, 266, 371 P.3d 316 (2016), the court concluded that "implied consent may satisfy the consent exception to the warrant requirement," but at the same time exempted such consent from *Schneckloth*'s traditional totality-of-the-circumstances test.  *See id.* at 266 (rejecting the argument that "the court is required to evaluate consent based on the totality of the circumstances").  However, as explained above, the traditional consent warrant exception *does* require analysis of the totality of the circumstances. Therefore, as best as we understand its reasoning, *Rios* appears to recognize a new warrant exception for implied consent, despite its own language to the contrary.

> chemical test if arrested for an OWI-related offense. It is a deal that is favorable to both sides. The person receives the significant privilege to drive on Wisconsin highways, and gives very little as his or her consent to give a sample is triggered only by the remote possibility that he or she is arrested for an OWI-related offense. On the other hand, the State gets a lot in the ability to more easily obtain samples for chemical testing when a subject operates while under the influence on its highways ….

We interpret the State's comments either as an argument that courts have already recognized statutorily implied consent as an exception to the warrant requirement, or alternatively, as an argument that we should do so for the first time here for policy reasons.

¶58 The State points to a long line of Wisconsin cases that have discussed the implied consent statute with approval. Generally, these cases track the language of WIS. STAT. § 343.305(2) and explain that pursuant to the implied consent statute, Wisconsin drivers are "deemed to have given consent" to testing.[18]

¶59 If the State means to suggest that these cases decided that statutorily implied consent satisfies the Fourth Amendment, we disagree. Wisconsin courts have often recited the statutory language verbatim, but that does not mean these courts have concluded that the warrantless

---

[18] *See, e.g.*, ***Washburn Cty. v. Smith***, 2008 WI 23, ¶40 n.36, 308 Wis. 2d 65, 746 N.W.2d 243 (noting, in a case not involving any legal challenge to the implied consent statute, that "[u]nder the Implied Consent Law, the defendant was deemed to have consented to the test ...."); ***Disch***, 129 Wis. 2d at 233 (noting, in a case involving an argument that a blood test should be suppressed because the arresting officer failed to follow statutory procedures, that an incapacitated person is "deemed to have consented to tests" under the incapacitated driver provision).

searches this language purports to authorize are constitutional. With the exception of **Wintlend**, none of these cases addresses the question presented here—whether the "consent" implied by WIS. STAT. § 343.305 satisfies any exception to the Fourth Amendment's warrant requirement.[19] And as noted above, **Wintlend**'s implied consent analysis cannot survive **Birchfield**. The only other Wisconsin case cited by the State that involves a clear Fourth Amendment challenge to any portion of the implied consent statute is **Bohling**, which was expressly overruled by **McNeely**.[20] Accordingly, we are not persuaded that Wisconsin courts have recognized statutorily implied consent as an exception to the warrant requirement.

---

[19] *See, e.g.*, **State v. Zielke**, 137 Wis. 2d 39, 403 N.W.2d 427 (1987) (addressing whether noncompliance with implied consent procedures rendered an otherwise constitutionally obtained blood sample inadmissible); **Neitzel**, 95 Wis. 2d 191 (addressing whether a driver had the right to consult counsel before deciding to take a chemical test); **Nordness**, 128 Wis. 2d 15 (addressing a statutory and due process argument based on the limited scope of issues that a person who refuses a chemical test may raise at the ensuing license revocation hearing).

[20] For the sake of completeness, we mention two implied consent cases cited by the State that touch on Fourth Amendment issues, but neither lends support to the argument that there is a warrant exception for statutorily implied consent. In **Milwaukee Cty. v. Proegler**, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980), the defendant argued that "he was not sufficiently advised to allow him to make an 'informed or intelligent' decision to submit to a 'seizure' of his breath …." **Id.** at 623. The **Proegler** court briefly discussed two warrant exceptions—search incident to arrest and consent—and ultimately concluded that "[t]he defendant's consent is not at issue." Consistent with the later **Birchfield** decision, the **Proegler** court determined that the breath test was justified as a search incident to arrest. **Id.** at 623-24. In **Scales v. State**, 64 Wis. 2d 485, 493-94, 219 N.W.2d 286 (1974), the defendant argued that officers violated requirements of the implied consent statute when they drew his blood, but the court did not squarely address this challenge, and instead concluded that the blood draw was a lawful search incident to arrest. As noted above, the Court in **Birchfield** held that blood tests may not be "administered as a search incident to a lawful arrest for drunk driving." **Birchfield v. North Dakota,** 136 S. Ct. 2160, 2185 (2016).

¶60    Likewise, as the remand instructions in *Birchfield* make clear, the United States Supreme Court has not recognized an independent warrant exception for statutorily implied consent.  As we have discussed, if statutorily implied consent were its own warrant exception, then the United States Supreme Court presumably would have simply affirmed the *Beylund* matter on that basis, as the state had requested.  Instead, the Court directed the North Dakota Supreme Court to apply the well-known "totality of the circumstances" test.  *Birchfield*, 136 S. Ct. at 2187.[21]

¶61    To be sure, Beylund was not incapacitated, and the *Birchfield* Court acknowledged that incapacitated drivers pose particular challenges for officers attempting to gather evidence.  *See id.* at 2185 (recognizing that breath tests, which can be administered as a lawful search incident to arrest, cannot be administered to unconscious drivers).  Additionally, unlike conscious drivers, incapacitated drivers are incapable of supplying voluntary consent to blood tests at the time of the search.  Yet, despite the challenges posed by incapacitated drivers, the Court did not suggest that it is reasonable under the Fourth Amendment to draw the blood of an incapacitated driver on the basis of statutorily implied consent.  Instead, the Court expressly recognized that officers might have to first obtain a warrant:  "we have no reason to believe that such situations [involving incapacitated drivers] are common in drunk-driving arrests, and when they

---

[21] *See also **Commonwealth v. Dennis**, 96 Mass. App. Ct. 528, 536, 135 N.E.3d 1070 (2019), which takes the same approach we take today, relying on the Court's remand instructions in the **Beylund** matter to conclude that "the defendant's actual consent to a blood test must be 'voluntary' under the Federal Fourth Amendment standard."

arise, the police may apply for a warrant if need be." *Id.* at 2184-85. The Court's use of the phrase "if need be" suggests that another warrant exception might apply in any given case; we read this consistently with its statement two paragraphs earlier that warrantless blood draws are sometimes justified on the basis of an exigency.[22] If the Court had recognized a driver's implied consent as an independent warrant exception, there would never be a situation where police would be required to obtain a warrant or rely on exigent circumstances to draw the blood of an incapacitated driver.[23]

¶62 Finally, to the extent the State means to suggest that we should recognize a new warrant exception for statutorily implied consent, we decline to do so. Fourth Amendment jurisprudence is not static, and courts may, under certain circumstances, "exempt a given type of search from the warrant requirement." *Riley v. California*, 573 U.S. 373, 385 (2014). But as explained above, the United States Supreme Court had the

---

[22] *Birchfield*, 136 S. Ct. at 2184 ("Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not.").

[23] The State references the following passage from *Birchfield*: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and *nothing we say here should be read to cast doubt on them*." *Birchfield*, 136 S. Ct. at 2185 (internal citations omitted, emphasis added). If the State means to suggest that this passage shows that warrantless blood draws are constitutional on the basis of statutorily implied consent, we disagree. This passage plainly relates to the civil penalties and evidentiary consequences that implied consent statutes impose for refusal, not to whether implied consent statutes authorize constitutional warrantless searches.

opportunity to do so both in ***Birchfield*** and then again in ***Mitchell***, and it declined to do so. We see no reason to do what the United States Supreme Court pointedly did not, and what no majority of our own supreme court has chosen to do.

## C. Conclusion About the Constitutionality of the Incapacitated Driver Provision

¶63 For these reasons, we conclude that the consent that incapacitated drivers are deemed to have given by Wisconsin's implied consent statute and presumed not to have withdrawn by its incapacitated driver provision does not satisfy any exception to the Fourth Amendment's warrant requirement. We are not alone in reaching this conclusion. Indeed, the clear majority of state courts to consider this issue within the last decade agree with the conclusion we reach today.[24] Although a few states

---

[24] *See **Bailey v. State***, 338 Ga. App. 428, 790 S.E.2d 98 (2016), *overruled on other grounds by **Welbon v. State***, 301 Ga. 106, 799 S.E.2d 793 (2017) (holding unconstitutional the unconscious or incapacitated driver provision of the state's implied consent statute); ***Dennis***, 135 N.E.3d 1070 (same); ***State v. Vargas***, 2017-NMSC-029, 404 P.3d 416 (same); ***State v. Romano***, 369 N.C. 678, 800 S.E.2d 644 (2017) (same); ***Stewart v. State***, 2019 OK CR 6, 442 P.3d 158 (same); ***State v. Ruiz***, 581 S.W.3d 782, 786 (Tex. Crim. App. 2019) (holding unconstitutional the unconscious or incapacitated driver provision of the state's implied consent statute); ***Myers***, 640 Pa. 653 (plurality opinion) (same, holding later adopted by a majority of the court in ***Commonwealth v. Bell***, 211 A.3d 761, 783 (Pa. 2019), *cert. denied,* 140 S. Ct. 934 (2020)).

Many other state courts have recently addressed similar issues in cases involving conscious drivers and have also concluded that statutorily implied consent does not by itself satisfy the Fourth Amendment. *See, e.g.*, ***Flonnory v. State***, 109 A.3d 1060, 1066 (Del. 2015); ***State v. Pettijohn***, 899 N.W.2d 1, 29 (Iowa 2017); ***State v. Ryce***, 303 Kan. 899, 910, 368 P.3d 342 (2016), *adhered to on reh'g*, 306 Kan. 682, 396 P.3d 711 (2017); ***State v. Modlin***, 291 Neb. 660, 673, 867 N.W.2d 609 (2015); ***Byars v. State***, 130 Nev. 848, 859, 336 P.3d 939 (2014); ***Henry***, 539 S.W.3d 223, 244.

(continued)

have reached a contrary conclusion during that same time,[25] none have done so since the United States Supreme Court issued ***Mitchell***, which, as noted above, reinforced ***Birchfield***'s conclusion that implied consent does not satisfy the Fourth Amendment.

¶64 Thus, because the incapacitated driver provision purports to authorize warrantless searches that do not fit within any exception to the warrant requirement, the searches it authorizes will always violate the Fourth Amendment, unless the searches are justified by a separate warrant exception. And even if a separate warrant exception may often apply in these cases, *see **Mitchell***, 139 S. Ct. 2525 (discussing exigent circumstances and incapacitated drivers), that does not save the constitutionality of the incapacitated driver provision. If a court ultimately determines that such a search is constitutional in any given case, it will be on the basis of an exception such as exigent circumstances, not on the basis of anything set forth in the implied consent statute itself. Accordingly, we conclude that Prado has met her burden to prove that the incapacitated driver provision is unconstitutional beyond a reasonable doubt.

---

At least two other courts have concluded that statutorily implied consent does not satisfy the Fourth Amendment, but they nevertheless held provisions authorizing draws based on implied consent to be unconstitutional only as applied in the absence of exigent circumstances. *State v. **Havatone***, 241 Ariz. 506, 389 P.3d 1251 (2017) (considering an unconscious driver provision); ***People v. Eubanks***, 2019 IL 123525, 2019 WL 6596704 (considering a compelled blood draw provision).

[25] *See **People v. Hyde***, 2017 CO 24, 393 P.3d 962 (holding that the implied consent given by incapacitated drivers satisfies the traditional warrant exception for voluntary consent); ***Bobeck v. Idaho Transp. Dep't***, 159 Idaho 539, 363 P.3d 861 (Ct. App. 2015) (same); ***State v. Speelman***, 2017-Ohio-9306, 102 N.E.3d 1185 (interpreting ***Birchfield*** to justify blood draws from incapacitated drivers based on implied consent, but undertaking no constitutional analysis).

### III.  The State's Alternative Arguments

¶65     In the alternative, the State argues that the blood test result should not be suppressed even if the incapacitated driver provision is unconstitutional—either because there were exigent circumstances or because the officer relied on the statute in good faith.  We address these arguments in turn.

### A.  Exigent Circumstances

¶66     The State acknowledges that it did not advance any argument about exigent circumstances in the circuit court or in its original appellate briefs.  Then, after *Mitchell* was decided, the parties submitted supplemental briefs, which raise a series of new issues.  The parties dispute, among other things, whether the *Mitchell* plurality announced a new exigent circumstances rule, and if so, whether the State should be excused from its failure to argue exigent circumstances in light of the new rule *Mitchell* announced.  The parties also appear to dispute whether Prado would be able to demonstrate a lack of exigent circumstances under the test set forth by the *Mitchell* plurality.  We need not resolve these issues, since our decision about the good faith exception to the exclusionary rule is dispositive.  *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### B.  Good Faith

¶67     Ordinarily, evidence obtained through an unconstitutional search should be excluded at trial.  *Blackman*, 377 Wis. 2d 339, ¶68.  "The

exclusionary rule generally serves to 'deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'" *Id.* (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). However, courts deviate from the exclusionary rule under certain circumstances, including when law enforcement acted in objective good-faith reliance "on settled law (whether statute or binding judicial precedent) that was subsequently overruled ...." *Id.*, ¶70 (footnotes omitted).

¶68 Prado's crash and the warrantless blood draw that followed took place in December 2014, almost two years after *McNeely* was issued, but before *Birchfield* and *Mitchell*. The State argues that exclusion is inappropriate here because, as of December 2014, a reasonable officer would not have doubted the constitutionality of the incapacitated driver provision.

¶69 We pause to note that the exclusionary rule and its good faith exception attempt to balance critical but competing principles. On the one hand, there must be meaningful incentives in place to ensure that officials operate within constitutional bounds and respect the "interest that all individuals share in having their constitutional rights fully protected." *Arizona v. Gant*, 556 U.S. 332, 349 (2009). On the other hand, excluding otherwise admissible evidence can hinder enforcement of the law and interfere with "the criminal justice system's truth-finding function ...." *United States v. Leon*, 468 U.S. 897, 907 (1984). In balancing these principles, courts have generally applied the good faith exception where exclusion would not serve the "prime purpose" of the exclusionary rule, which is "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and

seizures." *Illinois v. Krull*, 480 U.S. 340, 347 (1987); *see also* *Herring v. United States*, 555 U.S. 135, 141-43 (2009); *State v. Kerr*, 2018 WI 87, ¶21, 383 Wis. 2d 306, 913 N.W.2d 787, *cert. denied*, 139 S. Ct. 848 (2019).

¶70    There are good reasons for courts to ensure that good faith remains the exception, not the rule.  Application of the good faith exception allows constitutional violations to go unremedied, even though "[i]t is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."  *Schneckloth*, 412 U.S. 218, 229 (quoting *Boyd v. United States*, 116 U.S. 616, 635 (1886)). Additionally, application of the exception could hamper development of Fourth Amendment jurisprudence, even though it is the duty of the judiciary "to say what the law is."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).   This is because defendants have less incentive to challenge an unconstitutional intrusion when they know that the evidence might be offered against them even if the court agrees that the evidence was unconstitutionally obtained.  *See State v. Dearborn*, 2010 WI 84, ¶¶83-87, 327 Wis. 2d 252, 786 N.W.2d 97 (Abrahamson, C.J., dissenting).  Further, when defendants *do* bring cases and the good faith exception applies, good faith "will resolve the issue unless courts become willing to render what amount to advisory opinions on Fourth Amendment issues not needed to decide the case."  *Id.*, ¶94 (Abrahamson, C.J., dissenting); *see also* Kay L. Levine et. al., *Evidence Laundering in a Post-Herring World*, 106 J. CRIM. L. & CRIMINOLOGY 627, 663 & n.176 (2016) (noting that "when the decision on exclusion is dispositive, courts may decide the remedial question first and fail to properly analyze the legality of the underlying conduct," and collecting cases where courts have done so).

¶71     Despite these concerns, we are persuaded that in this case, the State has met its burden to show that the officer who directed the warrantless blood draw acted in objective good-faith reliance on the incapacitated driver provision. At the time that Prado's blood was drawn, the incapacitated driver provision had been on the books for decades, and its constitutionality had not been challenged in any published appellate decision.[26] *Wintlend* was the law in Wisconsin and had not yet been overruled by *Birchfield*. The officer testified that he was familiar with *McNeely*, that he had been trained to use the Dane County telephone warrant system developed in *McNeely*'s wake, and that he had used the system approximately a dozen times, all in situations involving conscious drivers who refused to consent to chemical testing. However, the officer also testified that he had never attempted to obtain a search warrant for a blood draw from a person who was unconscious, and that based on the incapacitated driver provision, it did not occur to him that he might have to do so. As we understand it, the implication of this testimony is that the officer did not read *McNeely* to prohibit officers from relying on the implied consent of incapacitated drivers, which, as discussed above, the statute presumes has not been withdrawn.

_____

[26] We recognize that *Padley* had been decided six months before Prado's blood draw, and that, for the reasons explained above, a careful reader of *Padley* might have drawn conclusions about the constitutionality of the incapacitated driver provision. *See supra* ¶¶34-35. However, and also as explained above, we cannot overrule our own precedent. *Padley* may have been in conflict with the earlier *Wintlend*, but it could not and did not overrule it. Accordingly, we cannot conclude that at the time Prado's blood was drawn, an objectively reasonable officer would have read *Padley* to mean that the incapacitated driver provision was unconstitutional.

¶72 Prado's argument to the contrary relies on the notion that *McNeely* rendered the incapacitated driver provision "clearly unconstitutional." *Krull*, 480 U.S. at 349. According to Prado, *McNeely* unequivocally prohibited all categorical exceptions to the warrant requirement, including categorical exceptions based on implied consent. We are not persuaded. *McNeely* clarified the law on the warrant exception for exigent circumstances, but it did not clearly address whether or how the "consent" implied by implied consent law can satisfy a warrant exception. Although *McNeely* contains some language that could be read more broadly to suggest that *any* categorical exception to the warrant requirement was prohibited,[27] when this language is read in context, it is not clear that the Court meant to extend its "case-by-case" rule beyond the exigent circumstances exception.[28] As our supreme court has explained, the *McNeely* Court's analysis was limited to the exception for exigent circumstances. *See State v. Lemberger*, 2017 WI 39, ¶33 n.11, 374 Wis. 2d 617, 893 N.W.2d 232.

---

[27] The court stated: "[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case … it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 569 U.S. at 156. Based on this language from *McNeely*, a few courts in other states have determined that implied consent does not satisfy the Fourth Amendment. *See, e.g.*, *Flonnory*, 109 A.3d at 1066; *State v. Ruiz*, 509 S.W.3d 451, 454 (Tex. App. 2015), *vacated*, No. PD-1362-15, 2017 WL 430291 (Tex. Crim. App. Feb. 1, 2017).

[28] *See, e.g.*, *McNeely*, 569 U.S. at 145 ("[W]e hold, consistent with general Fourth Amendment principles, that exigency in [the warrantless blood draw] context must be determined case by case based on the totality of the circumstances."); *see also id.* at 150 n.3 (acknowledging that there is "a limited class of traditional exceptions to the warrant requirement that apply categorically," such as the automobile exception and the search incident to lawful arrest exception).

¶73    Accordingly, we conclude that the State has met its burden to show that the officer who ordered the warrantless blood draw acted in objective good-faith reliance on the incapacitated driver provision.

## CONCLUSION

¶74    For all these reasons, we conclude that the incapacitated driver provision of Wisconsin's implied consent statute is unconstitutional, but that Prado's blood test result should not be suppressed because the officer relied on that provision in good faith.  Accordingly, we reverse.

*By the Court.*—Order reversed.